TACOMA RY. & POWER CO. v. HAYS.

(Circuit Court of Appeals, Ninth Circuit. August 19, 1901.)

No. 656.

1. WITNESSES—SURPRISE OF PARTY CALLING WITNESS—RIGHT TO SHOW INCONSISTENT STATEMENTS.
   A party who has been surprised by the testimony of one of his own witnesses upon a material fact may be permitted by the court, in its discretion, to show that the witness had made a different statement previous to the trial, not for. the purpose of impeaching the witness generally, but for the party's own protection, by showing why the witness was called, and counteracting his adverse testimony.

2. STREET RAILROADS—COLLISION WITH VEHICLES—CONTRIBUTORY NEGLIGENCE.
   The rule that the failure of a person to stop, look, and listen before driving upon a railroad track constitutes negligence as a matter of law is not inflexible, even in case of steam railroads, and is only applicable to street railroads on a public street where the attending conditions are such that reasonable care and prudence would require such precautions.

3. SAME.
   Plaintiff was driving with a covered wagon along a street in a city upon which was an electric railway track. He looked back along the track, which could be seen for a quarter of a mile, and no car was in sight. He drove along the street for 400 feet at a moderate speed, and then turned to cross the track, without again looking back, not having heard any warning signal, when his wagon was struck by a car approaching from that direction, and he was injured. A municipal ordinance limited the speed of cars to 12 miles an hour, and there was evidence tending to show that the car which struck plaintiff was running at double that rate of speed, and that, if the speed had conformed to the ordinance, no collision would have occurred. Held, that the question of contributory negligence was properly submitted to the jury.
   Ross, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Western Division of the District of Washington.

This cause is brought into this court on writ of error to reverse a judgment of the circuit court for the district of Washington, Western division, awarding the plaintiff (defendant in error) the sum of $2,500 as damages for injuries received from the negligent operation of a street car by the defendant. 106 Fed. 48. It appears from the evidence given at the trial of the case that the plaintiff was a farmer, living some distance from the city of Tacoma, in Washington, and was in the habit of driving to that city at least once a month for the purpose of trading; that on the afternoon of January 15, 1900, he drove up to Beulow's grocery store, at the corner of Thirteenth and C streets, in said city, with a double team attached to a farm wagon covered with canvas, closed behind. The electric cars of the defendant ran on C street generally in one direction, from north to south, there being but a single track on that street. The plaintiff's wagon stood on C street, about 20 feet south of the south line of Thirteenth street, facing south. After unloading his produce, the plaintiff looked around the side of his wagon up C street to the north, and saw no car on the street. He could see as far up as Ninth street, a distance of about a quarter of a mile. He then drove down C street in a southerly direction, between the curb and the track, the horses walking for a part of the distance, and trotting slowly the rest of the way, until they reached a point about 400 feet down

the street, when the plaintiff, without again looking up the street, suddenly turned the horses directly across the track, to go into a livery stable on the opposite side of the street. An electric car immediately struck his wagon, throwing him out upon the pavement, and causing the injuries for which damages are sought to be recovered. It was contended for the plaintiff that when he looked up C street, and saw no car within 1,400 feet of him, he could presume that a car would not overtake him before he could reach 400 feet distant, an ordinance of the city prohibiting the car from attaining a higher rate of speed than 12 miles an hour in that part of the city; that plaintiff was not compelled to anticipate violation of this requirement, or other negligence, on the part of the defendant, and was not guilty of negligence in not looking again for a car before driving across the track. The defendant, on the other hand, contended that the same rule of law applicable to railroad crossings should be applied to street-car tracks in the business portion of the city, and that plaintiff's negligence was, therefore, so great a factor in contributing to his injury as to defeat his action. The defendant moved for judgment in its favor, both at the close of plaintiff's case and at the close of the entire case, but these motions were denied, the court allowing the case to go to the jury.

Crowley & Grosscup (C. S. Fogg and A. G. Avery, of counsel), for plaintiff in error.

Govnor Teats, for defendant in error.

Before ROSS and MORROW, Circuit Judges, and HAWLEY, District Judge.

MORROW, Circuit Judge (after stating the facts as above). The assignments of error present but two questions for determination: (1) Did the court err in allowing the introduction of certain impeaching evidence? (2) Did the court err in submitting the case to the jury upon the evidence?

1. The particular testimony sought to be impeached was given by one F. F. Gray, a witness called for the plaintiff, who testified that he saw the accident in question, and that the car was going at a speed of about 10 or 12 miles an hour. He was then questioned as follows by plaintiff's attorney:

"Q. Did you not tell me, at your house, the other night, that it was going twenty or twenty-five miles an hour? A. I do not think that I did. Q. Do you not know, as a matter of fact, that you told me— Mr. Grosscup: I object to that. This is his own witness. The Court: If you are surprised by the statement of the witness— Mr. Teats: I am. A. I do not remember saying that to you. * * * Q. Did you not state, also, that the car was running about twenty or twenty-five miles an hour? A. No, sir; I do not think I did. I have not any recollection of it."

On rebuttal the plaintiff called a Mr. Lund, who had assisted plaintiff's attorney in procuring evidence in the case, and the following testimony was given with reference to the statements of the witness Gray:

"Q. by Mr. Teats: Did you call upon Mr. Gray some time this week or last week? A. Yes, I called on Mr. Gray last week. Q. Did you talk with Mr. Gray concerning this accident? A. Yes. sir. Q. What did he say, if anything, as to the speed of the car? Mr. Grosscup: I object to that. The Court: Do you claim the right to impeach your own witness? Mr. Teats: I think we ought to, under the circumstances. The Court: It is sometimes admissible to do that where you are taken by surprise. Mr. Teats: We are absolutely taken by surprise. * * * Mr. Teats: Our statement of the case is simply this— The Court: You need not state it. You may ask the

question. Mr. Grosscup: We wish to preserve our exception. (Question read to witness.) A. Have you reference to the car at the time this accident occurred? Q. Yes. A. He said that car was running not less than twenty miles an hour."

The court admitted this evidence upon the statement by plaintiff's counsel that he was absolutely taken by surprise in the testimony of the witness Gray. A diversity of opinion exists upon the question of whether it is competent for a party to prove that a witness whom he has called had previously stated the facts in a different manner, but the trend of judicial expression appears to be in favor of the admission of such testimony, not for the purpose of impeaching the general character of the witness, but for the protection of the party calling him. Like justice to each of the contestants would seem to require that, where the testimony is undoubtedly a surprise, the party should have the privilege of showing why he called the witness; and the jury is quite as competent to judge of the credibility of the witnesses under such circumstances as in other contradictory statements. Exception to the general rule that a party cannot impeach his own witness has been made in many jurisdictions by allowing the introduction by him of other evidence showing that the witness has at other times made statements inconsistent with the testimony then given, and especially is this permitted when the testimony in question relates to a material fact in the case. Provision has been made for such procedure by statute in England and in many of the states, and the practice seems to be favorably regarded by the federal courts.

In the case of Swift v. Short, 34 C. C. A. 545, 92 Fed. 567, in discussing the privilege of a litigant to introduce contradicting testimony of other of his witnesses, the court says :

"A litigant may not introduce testimony for the purpose of showing that the general character for truth and veracity of one of his own witnesses is bad, but this rule does not go to the extent of preventing him from showing the verity of any particular fact or transaction which he wishes to establish. He may call witnesses to prove a particular fact, although their evidence with relation thereto contradicts the testimony of other witnesses who have previously testified in his favor with reference to the same transaction. Moreover, under some circumstances, where a party has been deceived by one of his witnesses, who has given testimony which was unexpected, the better view is that the party so deceived may impeach the witness to the extent of showing that the statements made by him on the witness stand are contrary to those made by him before the trial, or before he was sworn," —citing Phil. Ev. 905; Greenl. Ev. (15th Ed.) §§ 443, 444; Melhuish v. Collier, 15 Q. B. 878; and Hemingway v. Garth, 51 Ala. 530.

In Hickory v. U. S., 151 U. S. 303, 309, 14 Sup. Ct. 334, 38 L. Ed. 170, error was assigned in that the court did not allow the defendants to show that they were surprised by the testimony of one of their witnesses. The supreme court stated the rule to be:

"When a party is taken by surprise by the evidence of his witness, the latter may be interrogated as to inconsistent statements previously made by him for the purpose of refreshing his recollection and inducing him to correct his testimony; and the party so surprised may also show the facts to be otherwise than as stated, although this incidentally tends to discredit the witness. * * * By statute in England and in many of the states it has been provided that a party may, in case the witness shall, in the opinion of the judge, prove adverse, by leave of the judge show that he has made

at other times statements inconsistent with his present testimony; and this is allowed for the purpose of counteracting actually hostile testimony with which the party has been surprised,"—citing cases.

It is here specifically left to the discretion of the trial judge to admit the counteracting testimony. The court then shows that in the case in controversy the witness was not a hostile witness; that the testimony denied admission was not in itself prejudicial, but merely contradictory of an immaterial fact; that the privilege desired had been practically granted to the defendants by the court's allowing them to cross-examine the witness if they chose, and to prove the fact to be otherwise than as stated by him. It was held not to be error, because the court, in the exercise of its discretion, declined to concede any further relaxation of the rule. The discretion of the trial judge in the case at bar was similarly exercised. It does not appear that the testimony in question was admitted for any other purpose than that of showing why the witness Gray was called, and counteracting the hostile testimony with which plaintiff had been surprised. This is within the limits generally defined by statute and decision at the present time, and is therefore not reversible error.

2. Did the court err in submitting the case to the jury upon the evidence? The defense in this action is "contributory negligence" on the part of the plaintiff, and the defendant contends that the court erred in refusing to instruct the jury that the plaintiff's conduct in driving in front of the defendant's oncoming car without at that moment looking for its approach was such a want of ordinary care as to preclude him from recovery. The instructions given by the court are not in the record before us, and this question must be decided by the application of well-established rules of law to the evidence presented. The question of negligence is generally one of fact for the jury. It is only where the facts and the inferences to be drawn therefrom are such that all reasonable minds must reach the same conclusion that the question is ever considered one of law for the court. There is no fixed standard in the law by which a court is enabled to say arbitrarily in every case where the line must be drawn between negligence and ordinary care. What may be deemed ordinary care in one case may, under different circumstances, be gross negligence. The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court. It is their province to note the special circumstances and surroundings of each particular case, and then say whether the conduct of the parties in that case was such as would be expected of reasonable, prudent men under a similar state of affairs. When a given state of facts is such that reasonable men may fairly differ upon the question as to whether there was negligence or not, the determination of the matter is for the jury. Railroad Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485; Railroad Co. v. Griffith, 159 U. S. 603, 16 Sup. Ct. 105, 40 L. Ed. 274. This rule applies equally to the question of contributory negligence, as there is no more of an absolute standard of ordinary care and diligence by which the conduct of the plaintiff is to be judged, as a contributing cause of his

injury, than in the case of the negligence of the defendant. Railroad Co. v. Ives, supra.

In Railroad Co. v. Powers, 149 U. S. 43, 13 Sup. Ct. 748, 37 L. Ed. 642, the error assigned, as in this case, was the refusal of the trial court to instruct the jury that the deceased was guilty of such contributory negligence as to prevent a recovery. Mr. Justice Brewer, in delivering the opinion of the court, said:

"It is well settled that, where there is uncertainty as to the existence of either negligence or contributory negligence, the question is not one of law, but of fact, and to be settled by a jury; and this whether the uncertainty arises from a conflict in the testimony, or because, the facts being undisputed, fair-minded men will honestly draw different conclusions from them."

The primary negligence of the defendant is practically conceded in the case at bar. It appears from the evidence that at the time of the accident the car was rolling along the street of its own accord, there being a slight down grade at that point. The motorman testifies that he rang the bell, and supposed that the plaintiff heard it; that when the car was about 40 or 50 feet back of the wagon plaintiff turned his horses squarely across the track; that the brakes were immediately put on the car, but the track was moist and slippery, and the car could not be stopped before striking the wagon, nor until it had run some distance after colliding,—the testimony of the witnesses upon this point varying from 50 to 200 feet. The testimony of defendant's witnesses is not clear as to the rate of speed at which the car was running at the time the collision became imminent. Plaintiff's witnesses testify that it was running at the rate of from 20 to 25 miles an hour, and that the usual rate of running at that point was higher than 12 miles an hour, the statutory limit. In many jurisdictions the running of railroad trains within the limits of a city at a rate of speed greater than is allowed by ordinance is negligence per se, and with reference to street cars it has been held that any speed in excess of the allowable rate is at least evidence of negligence. Shear. & R. Neg. (5th Ed.) § 485a; Railroad Co. v. Duvall (Neb.) 58 N. W. 531, 533. The negligence of the plaintiff is, therefore, the pivotal point in the case at bar. Was he negligent, and, if so, was such negligence a contributing cause to his injury? The defendant maintains that the rule usually applied to the conduct of persons crossing the tracks of steam railroads is applicable to street railroads as well, and that the omission of the plaintiff to "stop, look, and listen" before crossing the track was negligence as a matter of law. This rule, even in the case of steam railroads, is not inflexible, but is dependent upon the surrounding circumstances to a greater or less degree, and is only applicable to street railways where the attending conditions are such that reasonable care and prudence would dictate such precautions. The duties of persons with respect to steam railways and street railways are not so analogous as to be governed at all times by the same rule. Railway Co. v. Whitcomb, 14 C. C. A. 183, 66 Fed. 915, 919. The rights of the person are greater, and the dangers less, in connection with the latter; the rights of street cars, no matter by what power impelled, not being superior to those of other vehicles, save in the one instance where a vehicle is

bound to get out of the way, and not to obstruct the passage of the car, owing to the inability of the car to travel in any other part of the street. The element of trespass is entirely absent in the case of a person crossing a street railway at any point, and the only care required of him is that which a reasonably prudent man would exercise, having due regard to the rights of others, and assuming that others (including the street-car companies) will exercise the same care; in fact, knowing that such care is imposed by municipal regulation upon the persons operating the street cars. This assumption does not, of course, warrant such a reliance upon it as to neglect means of self-preservation, but is an element of consideration in arriving at the standard of care to govern the particular case.

In the case of Schilling v. Railroad Co. (Sup.) 62 N. Y. Supp. 403, it was held that:

"Where a driver looked both ways before driving onto a city street on which a street railway was operated, to ascertain whether cars were approaching, he was not guilty of contributory negligence, as a matter of law, in not again looking behind him to ascertain the approach of cars during the time necessary to drive one block."

In Shea v. Railway Co. (Minn.) 52 N. W. 902, the supreme court of Minnesota held that:

"The degree of care required at the crossing of a highway and an ordinary steam railroad is not the test of care required in crossing the track of a street railroad on a public street. Hence the rule in the former case, that one approaching the crossing must look up and down the track before attempting to cross, is not necessarily applicable to the latter. The failure to do so is not, as a matter of law, negligence."

In Railroad Co. v. Albright (Ind. App.) 42 N. E. 238, the appellate court of Indiana declare that the "strict rules as to care governing in railroad crossing collisions do not apply to street-car cases." In that case the plaintiff, on turning into a street, looked, and saw that for a quarter of a mile no car was coming from the south, and also saw a car coming from the north, about a block away. He drove north until the south-bound car passed him, and then turned to cross the track, when he collided with a north-bound car. The evidence was conflicting as to whether a signal was given, and as to the speed of the car. It was held that the question of plaintiff's contributory negligence in not looking again at the moment of turning his horses onto the track was properly submitted to the jury.

In Rapid-Transit Co. v. Seigrist (Tenn. Sup.) 33 S. W. 920, plaintiff was approaching a street-car track while driving a delivery wagon. When about 10 yards from the crossing, before attempting to pass over the track, he looked back to see if the car was coming. He saw it some distance up the hill, seemingly 200 or 250 yards behind him, and thought he had plenty of time to cross the track in front of the car. He started to drive across, and did not look back again until the front wheels of his wagon were upon the track, and he heard the car coming very fast. A collision occurred, and plaintiff was injured. The court held that the jury was justified in finding that the plaintiff had observed the requisite precautions to prevent an accident, and that he was free from culpability in the matter; that, to entitle the plaintiff to recover for injuries received while passing

over a street railway, he need not show absolutely that he looked carefully up and down the track before venturing upon it,—citing Beach, Contrib. Neg. (2d Ed.) § 290. The court said further that, with the belief that he could safely cross the track, and rightly assuming that the motorman saw him, and had the car under reasonable control, the plaintiff had the right to continue his journey across the track without hindrance, and, having had that right, and having attempted to exercise it in a prudent manner, he could in no true sense be charged with responsibility for the consequences of his mistaken assumption that the motorman would likewise be prudent and not run upon him.

In Laufer v. Traction Co. (Conn.) 37 Atl. 379, the supreme court of errors of Connecticut discusses the standard of ordinary prudence applicable to such cases as the one at bar, and cites with approval the statement of the court in Connelly v. Railroad Co. (N. J. Err. & App.) 29 Atl. 438, with reference to the conduct of a traveler in crossing an electric railway track, as follows:

"If other vehicles threaten his safety, or if his attention is engrossed or distracted by the apparent imminence of danger from other sources, he must act with ordinary prudence with reference * * * to the group of circumstances that makes up the situation by which he is confronted. How a prudent man would act in the face of concurrent and distracting dangers must, in the nature of things, be a question of fact to be passed upon by the jury, and not a question of law upon which the court may order a nonsuit or direct a verdict."

The Connecticut court further states that:

"In every case where the inquiry is whether or not a party has acted with due care, the trior must apply the standard of the ordinarily prudent man. What would a man of ordinary prudence have done, situated as this party was?"

The same question may be asked in the case under consideration. It appears from the evidence that the plaintiff looked up the street just as he left the grocery, and could see no car on the track for a distance of a quarter of a mile; that, after proceeding along the line of the track at a moderate speed for 400 feet, he turned to cross the track, without again looking for a car, not having heard any warning signal of the approach of a car, and not believing that a car could overtake him in that length of time if running at the rate of speed required by municipal ordinance. He had a right to drive along the street, and had he not the further right, after he had looked and seen no car approaching, to drive across the track within a reasonable time without again looking, and to assume that he would not be recklessly run down? In exercising such rights, did he do all that a cautious and prudent man would have done under like conditions? These are purely questions of fact, determinable from the circumstances of the case as presented by the evidence, and from which different inferences might be drawn by different minds. Such questions are entirely within the province of the jury, under proper instructions from the court as to the law applicable thereto. That the instructions given were proper must be inferred, as no objection thereto appears to have been made by counsel.

On the two points involved we find no error, and the judgment is therefore affirmed.

ROSS, Circuit Judge. I feel obliged to dissent from the judgment in this case. It seems to me to be a difficult matter to conceive of a stronger case of contributory negligence than this one, where, according to the statement of the court, the plaintiff, with a double team attached to a farm wagon covered with canvas, closed behind, with knowledge of a street-car track operated by electricity, and looking up it for a distance of about a quarter of a mile to see if a car was in sight, and, seeing none, drove down the track between it and the curb of the sidewalk, the horses walking for a part of the distance and trotting slowly the rest of the way until they reached a point about 400 feet down the street, when, without again looking up the street, he suddenly turned his horses directly across the track to go into a livery stable on the opposite side of the street, when he was struck by an approaching car. It seems to me to have been negligence of the grossest kind for any sane person to travel slowly 400 feet along a railroad track, and then undertake to cross it without looking to see or stopping to hear if a car is approaching.