### LOS ANGELES TRACTION CO. v. CONNEALLY et al.

(Circuit Court of Appeals, Ninth Circuit. February 6, 1905.)

No. 1,086.

1. STREET RAILROADS—INJURIES AT CROSSING—CONTRIBUTORY NEGLIGENCE—PRESUMPTIONS.

In an action for death caused by a collision with a street car at a crossing, there was evidence that the horse deceased was driving approached the crossing at a gallop, whereupon the motorman immediately applied the brakes and did everything in his power to stop the car, and so far succeeded that deceased almost got across the track before the cart was struck. Immediately after the collision the horse appeared to be "sweaty," but stood quietly with two of his feet on the curbing of the sidewalk. The cart, when struck, was in a position indicating that deceased saw the car and took a diagonal course to cross ahead of it. *Held*, that such facts justified a finding that deceased was guilty of contributory negligence, so that it was error to charge that, in the absence of all evidence tending to show whether deceased stopped, looked, and listened before attempting to cross, it would be presumed that he did.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Street Railroads, §§ 210–215.]

2. SAME—DUTY TO STOP, LOOK, AND LISTEN.

A person about to cross a street railroad track in an incorporated city is not bound, as a matter of law, to stop, look, and listen.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Street Railroads, §§ 210–215, 256, 257.]

In Error to the Circuit Court of the United States for the Southern District of California.

Harris & Harris and Byron L. Oliver, for plaintiff in error.

Isidore B. Dockweiler and Joseph Scott, for defendants in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. This action was brought for the recovery of damages for injuries resulting in the death of one Luke Conneally, father of the plaintiffs to the action, defendants in error here, and resulted in a verdict and judgment in their favor. The injuries were received in a collision of Conneally's cart with one of the electric cars of the plaintiff in error, at the intersection of Jefferson street and Vermont avenue, in the city of Los Angeles. In its answer the defendant to the action put in issue the averments of negligence on its part, and also pleaded contributory negligence on the part of the deceased. The questions presented on the present appeal grew out of the latter defense.

The case is fairly stated by counsel, and is, in substance, as follows: Early in the evening of the accident, Conneally, who was a dairyman, and a strong, healthy man about 37 years of age, came into the city of Los Angeles to attend a meeting of the Milkmen's Association, and on his way to the meeting stopped at a saloon and took one drink of whisky; without apparent effect, however, for the evidence is undisputed that he was entirely sober at the meeting. After the meeting, and between 10:30 and 11 o'clock, he drank at least two glasses of beer; about 11:15 or 11:30 of the same evening he took within a few minutes of each other two drinks of whisky, and a few minutes later he drank at another saloon two small glasses of beer. During most of this time Conneally was accompanied by two other milkmen, named respectively E. Paggi and George W. Hood, both of whom were witnesses for the plaintiffs at the trial in the court below. These three persons lived near each other, and, after the drinking of the last two glasses of beer by Conneally, they started for their homes, Paggi and Hood in one conveyance, and Conneally in a heavy two-wheeled cart, drawn by one small, gentle horse. As they proceeded, Conneally was sometimes ahead, and at others Paggi and Hood were ahead, driving at the rate of about six miles an hour. There was no moon, and the night was dark and foggy, but it appears from the uncontradicted testimony that there was no difficulty in seeing from 30 to 40 yards. As the crossing of Jefferson street and Vermont avenue was approached, at which there was no street light, Paggi and Hood were in advance, and Conneally was following in his cart some 30 or 35 yards in the rear, which cart, according to the evidence, made a rattling noise. On Vermont avenue the defendant company had two tracks. The car that struck Conneally's cart and inflicted the injury which resulted in his death was going south on Vermont avenue, and was therefore on the west track. That street is straight for half a mile north from its crossing with Jefferson street, and its view unobstructed to one at the crossing. Of the men in the vehicle ahead of Conneally's, one testified that he saw no light on the car or from the car until after the accident; that he looked for a light, and saw none. The other said that "shortly after approaching Vermont, probably 30 or 40 feet from the line of the car track," he "glanced right and left, and saw no car." The motorman and conductor of the car that did the damage, and the motorman on a car approaching from the south, testified that the car was lighted; and the conductor further testified that at the time of the accident he was

engaged in making up his trip sheet; and several witnesses testified that from the arrangement of the electric current, and from the fact that other cars on that circuit were lighted, the car in question must have had its lights burning. Paggi and Hood testified that they heard no gong or other warning from the car, while the motorman's testimony was to the effect that he sounded the gong all the way down Vermont avenue. The car seems to have been going, at the time of the accident, at the rate of about 10 miles an hour, whereas the speed prescribed by an ordinance of the city was not to exceed 8 miles an hour.

It appears from the diagram introduced in evidence that Jefferson street is 60 feet, and Vermont avenue 80 feet, in width. So far as appears, there was but one eyewitness of the accident, who was the motorman of the car that inflicted the injury. He testified, among other things, as follows:

"As we approached the place of the accident, the front end of the car was somewhere between the lines of Jefferson street. I think it was near the north line, and a single rig came out of the darkness and started across the tracks in front of me. The horse was on a gallop, and just the moment I saw him I applied the brakes and reversed my car, and did everything in my power to stop, but I so slowed the car that he almost got across the track. If he had moved eighteen inches farther he would have cleared the track, but he didn't move that distance, so I struck the cart. To stop the car, I first applied the brake and threw my reverse. That is all that could be done to stop it. I made an extraordinary good stop. From the time I saw the cart, I should judge I stopped within a car length and a half—in the neighborhood of that. I believe a car is 39 feet in length. The moment I saw the cart I put on the brakes and tried to stop the car. After the accident occurred I got off the car and went back to the body. He [Conneally] was lying on his face, was turned over, and I examined him and felt his pulse, and he was still alive. I asked the conductor to go to Dr. Kissler's and call him. He lived only about half a block from where the accident happened. The conductor was at the body when I reached it; no one else. Mr. Hood and Mr. Paggi came afterwards. I am positive they did not come up until after. One of the first things I noticed was that Mr. Conneally had been drinking. I smelled liquor; it was real strong. The horse was standing with his front feet on the curbing, opposite the car. He was standing real still. He was tied afterwards."

The motorman's description of the position and condition of the horse was corroborated by the testimony of other witnesses, both for the plaintiffs and for the defendant, one of whom added that the horse was "sweaty."

After telling the jury that the burden of proof rested upon the plaintiffs as to all of the issues except that of contributory negligence, and that as to that the burden of proof rested upon the defendant, the court below instructed the jury as follows:

"Contributory negligence is such an act or omission on the part of the person injured, amounting to a want of ordinary care, as, concurring or co-operating with the negligent act or acts of the defendant, was the proximate cause of the injury complained of by the plaintiffs, and whether or not said deceased exercised due care and caution before or in crossing or attempting to cross defendant's railway track is one of the issues submitted for your determination. The court, however, instructs you in this connection that it is the duty of an individual, before crossing or attempting to cross a railroad track, to exercise reasonable care in the use of his senses of sight and hearing, to ascertain whether or not a car or train is approaching, and, if he fails to exercise such reasonable care, he is guilty of negligence.

"The court further instructs you on this branch of the case that, in the ab-

sence of all evidence tending to show whether the deceased, Luke Conneally, stopped, looked, and listened before attempting to cross the west track, the presumption would be that he did. But that presumption may be rebutted by circumstantial evidence, and it is a question for the jury whether the facts and circumstances proved in this case rebut that presumption, and, if they find that they do, they should find that he did not stop and look and listen; but if the facts and circumstances fail to rebut such presumption, then the jury should find that he did so stop and look and listen. In order to justify them in finding that he did not, all evidence tending to show that should be weightier in the minds of the jury than that tending to show the contrary."

The court also gave the jury these instructions:

"The jury are the sole judges of the facts and the credibility of the witnesses, and in civil cases, such as the present one, should base their findings on a preponderance of evidence, uninfluenced by sympathy or prejudice for or against either party.

"The jury are not bound, however, to decide in conformity with the declarations of any number of witnesses, which do not produce conviction in their minds, against a less number, or against a legal presumption or other evidence, satisfying their minds.

"If you believe from the evidence that said deceased was guilty of contributory negligence, your verdict will be for the defendant, even though there may have been negligence on the part of the defendant."

The instructions of the court concerning contributory negligence were duly excepted to by the plaintiff in error, and are here assigned as error. The portion most strenuously objected to is that relating to the presumption to be indulged by the jury that the deceased stopped, looked, and listened before attempting to cross the railroad track. That instruction is a copy of one approved by the Supreme Court in the case of Baltimore & Potomac Railroad Company v. Landrigan, 191 U. S. 461, 24 Sup. Ct. 137, 48 L. Ed. 262, and was evidently taken from it. But that case presented a very different state of facts from the present one. In the first place, the instruction itself is to the effect that the presumption mentioned arises only "in the absence of all evidence tending to show" whether the deceased stopped, looked, and listened before attempting to cross the railroad track. Such instruction was applicable to the facts of the Landrigan Case, for, so far as appears from the report of the case, there was no evidence there tending to show whether the plaintiff's intestate stopped, looked, and listened before attempting to cross the track. The present case is wholly different in that respect, for not only did the motorman (the only eyewitness to the accident, so far as appears) testify that the horse that the deceased was driving came out of the darkness on a gallop, upon the discovery of which he immediately applied the brakes, and did everything in his power to stop the car, and that he so slowed the car that the deceased almost got across the track before the cart in which he was riding was struck, but that testimony was somewhat, at least, corroborated by other uncontradicted testimony to the effect that the horse was "sweaty," indicating that he had been driven rapidly; that he was naturally so gentle as to stand, after such a crash, quietly with two of his feet on the curbing of the sidewalk; and that the cart when struck was from 30 to 50 feet south of the south line of the crossing, which would tend to show that the deceased saw the car and took a diagonal course to cross ahead of it. The jury might have found some corroboration

of all this, too, in the uncontradicted testimony to the effect that, during the evening of the accident resulting in the death of the deceased, he took three drinks of whisky, and at least four glasses of beer, all of which beer, and two glasses of the whisky, were taken by him within about an hour and a half of the time of the accident.

The facts and circumstances here presented wholly differentiate the case, in our opinion, from that of Baltimore & Potomac Railroad Company v. Landrigan, supra, for it is very clear that in the present case there was evidence tending to show that the deceased, Conneally, did not stop before attempting to cross the track upon which he was injured. Where there is evidence upon the question of alleged contributory negligence, the case should be determined upon the evidence, and not upon a presumption that arises only in the absence of all evidence. Philadelphia, etc., Railway Co. v. Stebbing, 62 Md. 504; Salvers v. Monroe, 104 Iowa, 74, 73 N. W. 606; Bell v. Clarion, 113 Iowa, 126, 84 N. W. 962; Smith v. Railway Co. (N. D.) 53 N. W. 173; Olmstead v. Railway Co. (Utah) 76 Pac. 557; Vulkman v. Railway Co. (Dak.) 37 N. W. 731; Huber v. Railway Co. (Dak.) 43 N. W. 819; Seaboard, etc., Co. v. Walthour (Ga.) 43 S. E. 720. But for the instruction of the court to the effect that the deceased was presumed to have stopped, looked, and listened before crossing the track, the jury might, as said by counsel for the plaintiff in error, have found from the evidence that the car was lighted; that he put his horse into a gallop, and undertook to cross the track ahead of the car, thereby taking the risk of doing so.

There is also another marked distinction between the present case and that of Baltimore & Potomac Railway Company v. Landrigan. The latter was a case of a steam railroad, in which the duty usually devolves upon one crossing its tracks to stop, look, and listen before undertaking to do so. There could, of course, be no legal presumption that such an act was performed, unless the duty to perform it existed. We know of no decision, and have been cited to none, in which it has been held that it is always the duty of a person to stop before crossing a street railroad track in an incorporated city. Certainly, in the populous portion of a city or town such a rule would be unreasonable and highly inconvenient; but it may be that in the more sparsely settled portions a like rule to that applicable to steam roads should apply to street railroads.

In the case of Tacoma Railway & Power Company v. Hayes, 110 Fed. 496, 49 C. C. A. 115, this court, in the course of its opinion, said:

"The defendant maintains that the rule usually applied to the conduct of persons crossing the tracks of steam railroads is applicable to street railroads as well, and that the omission of the plaintiff to 'stop, look, and listen' before crossing the track was negligence as a matter of law. This rule, even in the case of steam railroads, is not inflexible, but is dependent upon the surrounding circumstances to a greater or less degree, and is only applicable to street railways where the attending conditions are such that reasonable care and prudence would dictate such precautions. The duties of persons with respect to steam railways and street railways are not so analogous as to be governed at all times by the same rule. Railway Co. v. Whitcomb, 14 C. C. A. 183, 66 Fed. 915, 919. The rights of the person are greater, and the dangers less, in connection with the latter; the rights of street cars, no matter by what

power impelled, not being superior to those of other vehicles, save in the one instance where a vehicle is bound to get out of the way, and not to obstruct the passage of the car, owing to the inability of the car to travel in any other part of the street. The element of trespass is entirely absent in the case of a person crossing a street railway at any point, and the only care required of him is that which a reasonably prudent man would exercise, having due regard to the rights of others, and assuming that others (including the street car companies) will exercise the same care; in fact, knowing that such care is imposed by municipal regulation upon the persons operating the street cars. This assumption does not, of course, warrant such a reliance upon it as to neglect means of self-preservation, but is an element of consideration in arriving at the standard of care to govern the particular case."

For the error above pointed out, the judgment must be, and is, reversed, and the cause remanded to the court below for a new trial.