## GRIFFIN WHEEL CO. v. SMITH.

(Circuit Court of Appeals, Ninth Circuit. October 4, 1909.)

No. 1,689.

1. MASTER AND SERVANT (§ 270*)—MASTER'S LIABILITY FOR INJURY TO SERVANT—EVIDENCE.

In an action by a servant against the master to recover for a personal injury resulting from the falling of a drawbridge, the construction of which was alleged to be defective and dangerous, it was not error to permit a workman, who assisted in building the bridge, and who testified that he told defendant's foreman in charge that the mode of construction was improper and dangerous, to state his reasons, by pointing out the defects, where such testimony was limited by the court to the purpose of showing that knowledge of the defective construction was brought home to defendant.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 923; Dec. Dig. § 270.*]

2. WITNESSES (§ 380*)—RIGHT TO IMPEACH ONE'S OWN WITNESS—SURPRISE OF PARTY—USE OF PRIOR STATEMENT OF WITNESS.

Where a party has been surprised by the testimony of his own witness, he may, in the discretion of the court, be allowed to offer evidence to show that prior to the trial the witness made a contradictory statement, not for the purpose of impeaching the general character of the witness, but for the protection of the party calling him; but where the previous statement is in writing, and the party has been permitted to call the attention of the witness to the parts which contradict his testimony, it is not an abuse of discretion to exclude the entire statement, when offered in evidence for impeaching purposes.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1214, 1219; Dec. Dig. § 380.*]

3. TRIAL (§ 260*)—INSTRUCTIONS—REQUESTS—INSTRUCTIONS ALREADY GIVEN.

The refusal of an instruction as to the assumption of risk, requested by defendant in an action by a servant for a personal injury, *held* not error, in view of the charge given, which sufficiently covered the subject.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 657; Dec. Dig. § 260.*]

In Error to the Circuit Court of the United States for the Western Division of the Western District of Washington.

Action by John Smith against the Griffin Wheel Company. Judgment for plaintiff, and defendant brings error. Affirmed.

The complaint of the defendant in error in the action which he brought against the plaintiff in error alleged that on and prior to July 18, 1907, the former was employed as a common laborer by the plaintiff in error at its foundry and machine plant, his duties, among other things, being to load and push slag cars over a narrow-gauge railroad from the foundry out to the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

dump; that the said railroad was intersected by a drawbridge, over which was laid the rails of the road; that the drawbridge was raised and lowered by means of a crank, which, when turned, revolved a sprocket wheel, around which ran a double belt chain, which chain, in turning, revolved another sprocket wheel attached to an iron bar at the upper end of the chain, causing the iron bar to revolve and wind up a rope, one end of which was attached to the bar, and the other end to the outer end of the bridge by means of an open hook; that the drawbridge, when raised, remained in a vertical position, and was held there by means of the said open hook attached to the end of the rope; that the said structure and the appliances for raising and lowering the same had been constructed in a negligent, dangerous, and defective manner, in that no ratchet or other contrivance had been furnished or attached to the crank, so as to prevent the crank from running back by reason of the weight of the drawbridge when the same was being raised or lowered, or in an upright position, and that the rope was allowed to run out and permit the drawbridge to fall from an upright position without warning; that the hook at the end of the rope was a defective and improper hook, for the reason that it was an open hook; that the construction of the said structure and its appurtenances was defective and dangerous for the further reason that "absolutely no safeguard or contrivance had been provided on such structure to prevent said drawbridge from falling backwards when in an upright position." The complaint alleged, further, that the defective and dangerous condition of the structure and its appurtenances had existed for a long time prior to the accident complained of, as was well known to the plaintiff in error, but that said defective and dangerous condition was not known to the defendant in error, and that the plaintiff in error, though well knowing said defective and dangerous condition, willfully and negligently and wantonly allowed and permitted it to remain, and to be used and operated, in such unsafe and defective condition, and negligently and wantonly failed to warn the defendant in error of such defective and dangerous condition. There was evidence upon the trial that the defendant in error had no knowledge or information of the danger of the use of the drawbridge or of its defective construction; that at the time of the accident he was using and operating said drawbridge in the manner in which he had been instructed to use it by the foreman of the plaintiff in error; that on July 18, 1907, while he was discharging his duties in the foundry, he was directed by the foreman to lower the drawbridge and then haul out slag; that the bridge was then approximately upright, leaning a little backwards, and resting upon a wooden crosspiece fastened by short nails to uprights on either side; that the defendant in error went behind the drawbridge, and pushed the same out, and manipulated the crank thereof in the manner in which he had been directed so to do by the foreman; that upon his pushing the drawbridge to a perpendicular position and placing his fingers upon the crank, the open hook fell out of the ring without his knowledge, and the drawbridge, weighing between 500 and 600 pounds, fell backwards, broke away the said crosspiece, and fell upon him, crushing him to the ground and inflicting upon him serious injuries; that the bridge was constructed under the direction of the said foreman, and at the time of its erection one Furrer, a carpenter working thereon, notified the foreman that it was being constructed in a dangerous manner, that it was unsafe because it played below the shaft when upright, and because the hook, being an open one, was unsafe, for the reason that it might slip out of the ring. There was testimony that the blacksmith who had made the hook had notified the foreman that an open hook was dangerous to use upon the structure, as it was likely to come out of the ring and permit the drawbridge to fall. The testimony of these two witnesses was permitted by the court for the purpose of showing knowledge of the defects on the part of the plaintiff in error. There was testimony that, as the bridge was first constructed, two men were required to raise it, but that before the accident it was refitted with different sprocket wheels, so that one man could operate it. The jury returned a verdict for the defendant in error in the sum of $10,000, for which judgment was rendered.

Bamford A. Robb and Hudson & Holt, for plaintiff in error.
Flaskett & McMenamin, for defendant in error.

Before GILBERT and MORROW, Circuit Judges, and HUNT, District Judge.

GILBERT, Circuit Judge (after stating the facts as above). It is assigned as error that the court admitted in evidence the testimony of Furrer, the carpenter, as to the reason why he told the foreman that the bridge was dangerous at the time when it was being constructed. To that question he answered:

"Because when the bridge was up, when she got loose out of that hook, there was nothing—if it come unhooked, there was nothing—to hold it from falling either way; and, second, I didn't see any appliance or dog or ratchet on the cogwheel."

It was proper to permit the witness to testify that he warned the foreman of the plaintiff in error, at the time of constructing the bridge, that the bridge and its appliances as constructed were dangerous. But it is urged that it was error to permit him to testify as an expert as to the reasons why he considered it dangerous. The court, however, was careful to rule that the testimony was admitted only for the purpose of bringing home to the company knowledge of the defective construction of the drawbridge and its appliances, and for the purpose of presenting to the jury the question whether or not the plaintiff in error used such care as is ordinarily used by reasonably prudent persons under like circumstances; and in instructing the jury the court said of this testimony:

"It was not admitted as having any tendency to establish that the structure or appliances were not sufficient or properly made, for that is a question to be decided by you. It was admitted solely for the purpose of bringing home to the defendant knowledge of the condition of insufficiency, if it was insufficient."

As safeguarded by the ruling of the court, and the instruction to the jury, we cannot see that there was error in admitting the testimony. The witness having detailed fully the facts as to the nature of the construction and its defects as he saw them and the warning which he gave to the foreman, it was not improper to permit him to state the reason why he considered them dangerous. It was but another way of pointing out the defects which he observed in the structure, and to which he directed the attention of the plaintiff in error.

It is earnestly contended that the court erred in excluding from the evidence a certain written statement purporting to have been made by Walter Grunnert, a witness for the plaintiff in error. The statement was dated about four months after the date of the accident, and seven months before the trial. It consisted of several detached sheets of typewritten paper, the last of which only was signed by the witness. The witness identified the last sheet of the statement, but, on reading the other pages, testified that he could not say that it was an exact copy of what he had signed. He was interrogated as to the several distinct portions of the statements which were claimed to be contradictory of his testimony, and was asked whether or not he had so stated. He made no denial of having made any of the said statements so attributed to him. Some of them he admitted that he had made. As to one of them, he testified that he did not remember that he had made it, but

that he did not think the statement was true. Counsel for the plaintiff in error finally offered the whole statement in evidence "for the purpose of impeaching the testimony of the witness," and to the offer for that purpose an objection was sustained. The court said:

"Regardless of the objection, such statements as are in contradiction of what the witness now says are competent, for the purpose of showing the defendant may have been taken by surprise, but to go over the whole statement where it is not in conflict is not competent. Such statements as he now contradicts. you may call to his attention."

If a witness unexpectedly gives material evidence against the party who calls him, he may, for the purpose of refreshing his memory or awakening his conscience, be asked if he has not made a certain contradictory statement. If he denies that he made it, a situation arises upon which the authorities are divided; many cases holding that the fact that he made it cannot be shown in evidence. But the rule which is sustained, as we think, by the weight of authority and the better reasoning, and which this court has heretofore expressly approved in Tacoma Ry. & Power Co. v. Hays, 110 Fed. 496, 49 C. C. A. 115,. is that, where a party has been surprised by the testimony of his own witness, he may, in the discretion of the court, be allowed to offer evidence to show that, prior to the trial, the witness made a contradictory statement; and this, not for the purpose of impeaching the general character of the witness, but for the protection of the party who calls him. The question of the admissibility of such testimony resting, as it does, in the discretion of the court, we can discover in the record no ground for holding that discretion was abused in the present case. The jury, in view of the admissions of the witness as to his prior statements, had the benefit of practically all the contradictory testimony that his alleged prior statement contained. We find no error in the exclusion of the statement from the evidence.

The plaintiff in error contends that the trial court erred in sustaining the objection to the question, asked the defendant in error, as to whether he had not observed Grunnert, at different times letting down the bridge, holding his hand on the crank. But that ruling of the court is not among the assignments of error, and it is not of the character of those of which this court should take cognizance in the absence of assignment.

Error is assigned to the refusal of the court to give the jury certain instructions to the effect that if they found from the evidence that the defendant in error knew, or by the exercise of ordinary prudence could have known, that it was dangerous to operate the drawbridge, or that the danger of its use was alike open and obvious to him and the plaintiff in error, there could be no recovery, and that, by continuing in the employment of the plaintiff in error without complaint,. the defendant in error assumed the risks and dangers of the employment which he knew, or which he should have known. But, while the instruction so requested might properly have been given, we are of the opinion that the charge which the court gave to the jury sufficiently covered all the essential features of the case, and that the omission to direct their attention more prominently to the rule that one who enters the employment of another as his servant assumes the

risks of defects resulting from the master's negligence, when those defects are obvious or plainly discernible by a person of ordinary prudence in the servant's situation, was not error for which the judgment should be reversed. The court charged that it was the duty of the defendant in error to observe the surroundings, and to use ordinary care to ascertain the state of repair and condition of the drawbridge contrivances, to heed the instructions given him, and to obey the orders of those selected to direct him, and that, if he failed in those respects, he could not recover; that, if he assumed the risks, he could not recover; that, if the accident was one which reasonable prudence could foresee or reasonable skill avoid, he could not recover; and that the burden was upon the defendant in error to show that the plaintiff in error had failed in its duty to provide him a reasonably safe place to work and reasonably safe appliances to work with. "To supply these," said the court, "was a positive duty, which the defendant could not avoid by delegating it to some one in charge of its works, or in any other way, and thereby relieve itself of liability, and the plaintiff had the right to assume, if he had not discovered to the contrary, or could not have discovered to the contrary by the use of ordinary care, that the appliances provided by the defendant, in so far as they related to the plan and construction, were sufficient for his protection." The foregoing is but an outline of the instructions given to the jury, the details of which it is unnecessary to repeat.

It is contended that the court erred in refusing to instruct the jury that if they found from the evidence in the case that the plaintiff in error had provided another workman to assist the defendant in error in lowering the drawbridge, and that the latter attempted to lower the same without such assistance, he assumed the risk thereof. The objection to this requested instruction is that there was no evidence to justify it. The testimony of Grunnert was that it was customary for one man to do the work; that of the superintendent, Duffles, was that the handle of the crank was only from eight to ten inches long, which would indicate that it was intended for one man; and that of Furrer was that one man could raise or lower it. The only testimony as to two men doing the work was that of Leonard, who testified that he had seen two men sent to do it; but he also testified that it was not impossible for one man to raise and lower the drawbridge, and that he had done it himself.

We find no error for which the judgment should be reversed. It is accordingly affirmed.