## SNEED et al. v. UNITED STATES.

(Circuit Court of Appeals, Fifth Circuit. March 11, 1924. Rehearing Denied April 1, 1924.)

No. 3994.

1. **Conspiracy ⟨key⟩43(11)—Indictment for conspiracy to and for influencing juror held good.**

A count in an indictment charging that defendants furnished whisky to a juror in a case pending in a United States court, and offered him a bribe to influence, and which did influence, his action, and impede the due administration of justice, *held* to charge an offense under Criminal Code, § 135 (Comp. St. § 10305), and a further count charging a conspiracy to so influence action of the juror, *held* to charge an offense under section 37 (Comp. St. § 10201).

2. **Conspiracy ⟨key⟩37—Conspiracy to commit an offense is not merged in the accomplished crime.**

A conspiracy to commit a crime is a separate offense, and is none the less a crime because by its success an additional crime is committed, and the crime of conspiracy is not merged in the accomplished offense.

3. **Witnesses ⟨key⟩344(1)—Evidence held properly admitted, as bearing on credibility of witness.**

A juror in a civil suit, on his trial for contempt for drinking, while a juror, with defendants, who were parties to the suit, testified that they made no improper attempt to influence his verdict, but while in jail for the contempt he sent a note to the judge, stating that he would tell the truth. In a subsequent prosecution of defendants for his attempted bribery, the juror was a witness for the government. *Held*, that such note was properly admitted in evidence for the purpose, as limited, of being considered by the jury in determining the credibility of the witness.

4. **Witnesses ⟨key⟩380(5)—When taken by surprise, prosecution may introduce evidence tending to contradict own witness.**

Where the prosecution was surprised by the testimony of one of its own witnesses, who not only did not testify as expected, but on cross-examination testified to facts contradicting those to which he was expected to testify, it was not error to admit in evidence a sworn statement made by the witness, on which the prosecution relied in calling him.

5. **Criminal law ⟨key⟩349—Evidence of conduct in jury room held pertinent to the issues.**

On trial of defendants for conspiracy to bribe a juror, and for bribing the juror, proof was admissible that the juror did, in the jury room, oppose the other eleven jurors, and secure a large reduction in the amount of the verdict against defendants by threatening a mistrial.

In Error to the District Court of the United States for the Northern District of Texas; James Clifton Wilson, Judge.

Criminal prosecution by the United States against John Beal Sneed and J. Renfroe. Judgment of conviction, and defendants bring error. Affirmed.

Certiorari denied 44 Sup. Ct. 635, 68 L. Ed. ——.

W. P. McLean, Jr., of Fort Worth, Tex., and James E. Gresham, of Mexia, Tex. (McLean, Scott & McLean, of Fort Worth, Tex., James E. Gresham, of Mexia, Tex., and J. F. Cunningham, of Abilene, Tex., on the brief), for plaintiffs in error.

Henry Zweifel, U. S. Atty., of Fort Worth, Tex. (Henry Zweifel, U. S. Atty. and H. L. Arterberry, Sp. Asst. U. S. Atty., both of Fort Worth, Tex., on the brief), for the United States.

⟨key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before WALKER and BRYAN, Circuit Judges, and SIBLEY, District Judge.

SIBLEY, District Judge.    Sneed and Renfroe were each convicted and sentenced to two years' imprisonment on the first and second counts of an indictment against them and one Posey, who was acquitted.    The first count charges a conspiracy corruptly to influence, obstruct, and impede the due administration of justice in a court of the United States, in which was pending a civil case to which Sneed was the party defendant, by influencing and impeding one Patterson, a juror therein, by giving him whisky and offering him money to hang the jury and cause a mistrial, and that as overt acts in pursuance of the conspiracy Sneed and Renfroe had given Patterson whisky and offered him $1,000 to hang the jury, had caused Patterson to spend the night with Renfroe, and Sneed had then paid for the whisky and lodging.    The second count charges that the defendants did corruptly influence, obstruct, and impede the due administration of justice in said trial, and did endeavor so to do, in that they had plied the juror Patterson in the manner above set forth, and charges further that by reason thereof Patterson did influence, obstruct, and impede the jury in arriving at a verdict, and did endeavor to hang the jury.

Arrest of judgment was moved because no crime was alleged in either count, and because the conspiracy charged in the first count was merged in the accomplishment of the crime which was the object of the conspiracy as established by the verdict on the second count.    The sentence of two years is also excepted to, in that the limit of punishment under the second count is one year.

[1] Criminal Code, § 135 (Comp. St. § 10305), makes punishable whoever corruptly or by threat or force endeavors to influence, intimidate, or impede, among others, witnesses and jurors in the discharge of their duty in a federal court, and, more broadly, whoever by such means shall influence, obstruct, or impede, or endeavor to influence, obstruct, or impede, the due administration of justice therein. The things alleged to have been done concerning the juror Patterson undoubtedly constitute a corrupt endeavor to influence and impede him in his duty, and through him to impede the administration of justice in a court of the United States, and such success is alleged as to show actual impediment both of the juror Patterson and of the other eleven. The second count therefore charges a crime within both branches of section 135.    A conspiracy to commit such a crime is a conspiracy to commit an offense against the United States, under section 37 (Comp. St. § 10201).    That the United States was not a party to the civil cause in which Patterson was a juror makes no difference.    The justice being administered was the justice of the United States, and its purity and freedom is to be protected by federal law.    Wilder v. United States, 143 Fed. 433, 74 C. C. A. 567.    The first count well charges the offense of conspiracy.

[2] Touching merger, it may be that an endeavor or attempt to commit a crime is so swallowed up by its actual perpetration as that one should not justly be punished both for the crime and for the attempt.

But conspiracy is more than an attempt at crime. Its distinguishing element is the combination of several persons for an unlawful end. Such a combination may be more deliberate, extensive, and dangerous to society than the thing conspired about in itself ordinarily is, and may be separately and more severely punished. The conspiracy remains none the less a crime because by its success an additional crime was done.

"It is apparent from a reading of section 37, Criminal Code (section 5440, Rev. Stat.) and has been repeatedly declared in decisions of this court, that a conspiracy to commit a crime is a different offense from the crime that is the object of the conspiracy. * * * The conspiracy, however fully formed, may fail of its object, however earnestly pursued; the contemplated crime may never be consummated; yet the conspiracy is none the less punishable. * * * And it is punishable as conspiracy, though the intended crime be accomplished." United States v. Rabinowich, 238 U. S. 78, 85, 35 Sup. Ct. 682, 683 (59 L. Ed. 1211).

Though an overt act is necessary under section 37 to make the conspiracy punishable, and though it fixes the venue of the trial, yet it is the conspiracy and not that act that is punished. If the overt act be the offense which was the object of the conspiracy, and is also punished, there is not a double punishment of it. Similarly one may be punished for breaking a post office with intent to steal therein, and also for the stealing itself, since the law has made each a separate offense. Morgan v. Devine, 237 U. S. 632, 35 Sup. Ct. 712, 59 L. Ed. 1153. Accordingly the sentence of two years in this case is supported either by the first count alone or by both the first and second.

[3] The juror Patterson was a witness for the government. By his cross-examination it was made to appear that on his trial for contempt for drinking with a party while a juror he had testified that no improper approach had been made to him by the defendants, and that while in jail for the contempt he had changed his account of the matter following a note sent by him to the judge, the contents of which were brought into dispute. On redirect examination, over objection that it was irrelevant and hearsay, he was allowed to identify the note, and it was read as follows:

"Honorable Judge Wilson: I can lay in jail, but I cannot hide the truth from you any longer, if I lose my life the day I get out of jail. I will tell the truth if you want it now.
"Unworthy juror,                               H. J. Patterson."

This is assigned for error. Since the interest, bias, or prejudice of a witness is always for the consideration of the jury in weighing his testimony, a collateral issue touching them may often arise, to which evidence is relevant which does not bear directly on the main issue. When a witness does so unusual a thing as to testify to his own misconduct, or to change his sworn testimony, a natural question occurs as to why he has done so, and his motives may be a controlling factor in accepting or rejecting his testimony. He may swear directly to his motives, and the circumstances, including his conduct, may be shown within limits to be left to the discretion of the trial judge. Moore v. United States, 150 U. S. 57, 14 Sup. Ct. 26, 37 L. Ed. 996. This note was a part of the conduct of this witness, the very res gestæ of his

298 F.—58

change of attitude. All that a witness writes or says is sometimes not proper for proof, for it may serve as a cover for prejudicial hearsay as to the main issues in the case, but there was none such in this note. Irrespective of the fact that the defense first asked about the note and its contents, we think it was relevant and unobjectionable for the purpose to which it was limited by the judge, to aid in determining Patterson's present credibility as a witness.

Nor was there error in permitting proof from Patterson that he meant by the words "if I lose my life" that he was going to tell the truth, "regardless of what happened to him, more jail or anything else." This was but a direct statement of his motives. Had he said that he meant to imply a threat on his life, or a fear for it, at defendant's hands, a different question would have arisen. But his answer tended to rebut any such damaging reflection on the defendants. It was also proper to allow the prosecution to show by him that no approach was made or inducement offered by any representative of the government to produce the change in his testimony. This was information proper for the jury to have in estimating the weight to be given his evidence.

[4] A son of the defendant Renfroe was a government witness, and testified that, at the time that Patterson swore that Sneed was drinking with and bribing Patterson, Sneed was occupying another room with the witness, that they retired together, and that Sneed pulled off his clothes, except underwear, and went to bed in the usual way, and did not afterwards, to the knowledge of the witness, get up and dress. On cross-examination defendant proved by him that Sneed never left the room while the witness was awake. Over objection, the prosecution claiming a surprise, the witness was allowed to be shown a sworn statement signed by him, which he in effect denied making, and especially this part of it:

"I went to bed about 10:30 p. m., and at the time Sneed was lying across his bed dressed. He later left the room, and I had gone to sleep before he returned, and I cannot state when he returned."

Thereupon the prosecution was allowed to prove the execution of the sworn statement, and to introduce it in evidence, over the objection that it could not thus impeach its witness voluntarily sworn. The evidence was confined by the judge to the sole question of the credibility of the witness. That a party may freely contradict the facts testified to by his witness through other witnesses is beyond question. That he may not attack generally the character and integrity of a witness voluntarily produced by him is also established. He may call to the attention of his witness a previous statement to refresh his recollection, and if the witness appear to be hostile or unwilling, may be allowed to ask leading questions. Hickory v. United States, 151 U. S. 303, 14 Sup. Ct. 334, 38 L. Ed. 170; St. Clair v. United States, 154 U. S. 134, 14 Sup. Ct. 1002, 38 L. Ed. 936; Putnam v. United States, 162 U. S. 687, 694, 16 Sup. Ct. 923, 40 L. Ed. 1118. Whether, if the witness deny the contradictory statement attributed to him, he may be impeached to the extent of proving it, has been the subject of great diversity of opinion, and the occasion of many statutes.

In Hickory v. United States, supra, it was said that at common law it could not be done, and the trial court was upheld in its refusal; but allusion was made to statutory relaxation of the rule, and to the discretion of the trial judge, and to the fact that the witness was not really hostile, but his evidence as to an alibi merely disappointed in not going so far as the defendant had been led to expect. In Tacoma Railway Co. v. Hays, 110 Fed. 496, 49 C. C. A. 115 this decision was construed as really recognizing a discretion in the trial court, and a contrary ruling was upheld. In St. Clair v. United States, supra, discretion is emphasized, and section 444 of Greenleaf on Evidence, which deals with the exact point under discussion, is approvingly quoted thus:

"But the weight of authority seems in favor of admitting the party to show that the evidence has taken him by surprise, and is contrary to examination of the witness preparatory to the trial, or to what the party had reason to believe he would testify, or that the witness has recently been brought under the influence of the other party and has deceived the party calling him."

In 40 Cyc. pp. 2693, 2685, it is on abundant authority said:

"Experience has shown that the tendency of the rule against showing contradictory statements of one's own witness is to place a party at the mercy of designing and perhaps hostile witnesses, by whom he may be surprised and entrapped, and according to the great weight of authority, and in some jurisdictions by statute, a party who is thus deceived by his own witness may prove that such witness had made a prior statement contradictory to his testimony. * * * But a party can thus impeach his own witness only when he shows that he has been surprised by the testimony of such witness, or where he has been deceived or entrapped into introducing the witness because of such contradictory statements, and the information as to the prior inconsistent statement must have come to the party or his counsel direct from the witness."

Moreover, there must be more than a mere disappointment in the witness, as in the Hickory Case, supra; there must be evidence from the witness that is affirmatively harmful. Thus, in a seduction case, a witness for defendant failed to testify as he said he would to an act of unchastity of the prosecutrix, but he testified nothing to defendant's detriment. The contradictory statement was not allowed, as it would serve no purpose but to prove the act of unchastity by hearsay. Rickerson v. State, 106 Ga. 391, 33 S. E. 639. But the witness Renfroe not only failed to testify that Sneed did leave the room, but testified to circumstances indicating that he did not, and this was reiterated at defendant's instance on cross-examination. It was not error under these circumstances to permit proof of the previous contradictory statement made directly to the representative of the government in preparing the case and relied on in offering the witness at the trial.

Error is further assigned, in that the writing introduced contained, beside the contradiction, many other things corroborative of the witness otherwise. These matters, however, were not really in dispute, and no such objection was taken at the trial. If well founded, it could have been met by reading to the jury only that portion which was contradictory, or was necessary to be read in order to understand it.

[5] Proof was received that Patterson did, in the jury room, oppose himself to the other eleven jurors, and did cause a great reduction in

the amount of the verdict, by threatening a mistrial. The objection that, as he was not charged as a co-conspirator, this was res inter alios acta and irrelevant, is not well taken. This conduct was proper circumstantial evidence under the first count and as the intended consequence of the otherwise proven conspiracy was admissible to illustrate its scope and trace its full history. Under the second count, this evidence directly supported the concluding charges of actual impediment of the jury.

The other assignments of error require no discussion, since they relate only to inconsequential rulings.

We find no reversible error, and the judgment is affirmed.