### WABASH R. CO. v. DE TAR.

(Circuit Court of Appeals, Eighth Circuit. November 15, 1905.)

#### No. 2,018.

1. RAILROADS—INJURY AT CROSSING—PRESUMPTION AS TO DUE CARE BY TRAVELER.

   Because the natural instinct of self-preservation generally prompts men to acts of care and caution when approaching or in the presence of danger, there is, in the absence of credible evidence of the actual fact in any instance, a presumption of the exercise of due care and caution; but, like other presumptions of fact arising from the ordinary or usual conduct of men, rather than from what is invariable or universal, this presumption is disputable, and cannot exist where it is incompatible with the conduct of the person to whom it is sought to apply it, which may be shown by the testimony of eyewitnesses to his movements, or by evidence of the physical surroundings and other conditions at the time.

   [Ed. Note.—For cases in point, see vol. 41, Cent. Dig. Railroads, § 1121.]

2. SAME—WEIGHT AND APPLICATION OF PRESUMPTION.

   The presumption of the exercise of due care and caution on the part of one approaching a place of danger is essentially inferior in probative force and weight to credible evidence, either direct or circumstantial, explanatory of the actual occurrence, and, in those courts where the presumption underlies the rule that the burden of proving contributory negligence rests upon the defendant and must be maintained by a fair preponderance of

the evidence, its force and influence are so largely embodied in the enforcement of that rule that it has little independent application, save as it rests upon a general, but not invariable, rule of human experience which may and should be considered in determining the credibility of evidence and the weight to be given to it when these matters are not otherwise entirely clear.

(Syllabus by the Court.)

In Error to the Circuit Court of the United States for the Southern District of Iowa.

James P. Hewitt (George H. Carr, A. C. Parker, and Craig T. Wright, on the brief), for plaintiff in error.

J. C. Mabry (Byron C. Ward and J. Edward Mershon, on the brief), for defendant in error.

Before VAN DEVANTER and HOOK, Circuit Judges, and AMIDON, District Judge.

VAN DEVANTER, Circuit Judge. This was an action to recover damages for the death of William De Tar, who was instantly killed by a train which came in collision with his wagon as he was driving over the crossing of the Wabash Railroad and Chestnut street in the outer part of Albia, Iowa. The petition charged the railroad company with negligence in that the speed of the train was excessive, no signal of its approach was given, and no precaution to discover the presence of travelers at the crossing was taken by the enginemen. The answer traversed this charge, and also alleged that the deceased was guilty of negligence contributing to the injury in that he drove upon the crossing without exercising reasonable care for his own safety. The trial in the Circuit Court resulted in a verdict and judgment for the plaintiff. It appeared from the evidence that the collision occurred about nine o'clock in the morning of a day in January; that the deceased was a mail carrier in the rural delivery service, was quite familiar with the crossing, having passed over it with his wagon and team almost daily for many months; and that the wagon was partially inclosed, and the team was gentle. In respect of the charge that no signals of the approach of the train were given, the evidence was conflicting. There was no direct evidence, in the sense of testimony from eyewitnesses, as to what, if any, precautions for his own safety were taken by the deceased as he approached the crossing; but there was at least substantial evidence tending to show that the physical surroundings and other conditions at the time were such that, had he made reasonable use of his senses of sight and hearing, he would have discovered the approaching train before he drove upon the crossing and in ample time to have avoided the collision. In its charge to the jury, the court, after stating that on the issue of contributory negligence the railroad company had the burden of proof and must maintain it by a fair preponderance of the evidence, gave the following instruction:

"It is a law of nature that you and I recognize that every man wants to live. It is so with men, unless their minds are disordered in some way or other. That is a natural instinct implanted within us, the desire to live. That is entitled to weight as evidence, as an affirmative fact, and can only be offset by

affirmative evidence on the other side. How much evidence does it take to ride down the presumption that every man is presumed not to do a negligent act? That is to say, whether one witness or several, or whether it may be ridden down by circumstances and situation and attendant facts, but this presumption that every man has a desire to live is entitled to weight as evidence. It is as though Mr. De Tar could in some way speak to us."

And in that connection the following requests to charge, tendered by the defendant, were refused:

"If you find from the evidence introduced that said Wm. De Tar did see or hear the train, or by exercising reasonable care he could have seen it, in time to avoid the accident, then the presumption that he exercised care in order to preserve his life is overcome by the evidence, and plaintiff cannot recover.

"If you first find that defendant was negligent, then the presumption that said Wm. De Tar exercised reasonable care in order to preserve his life would be sufficient to warrant a recovery, if there was no opposing evidence upon that question; but in this case affirmative evidence has been introduced tending to show negligence upon the part of said De Tar, and, if you find there is sufficient evidence to establish his negligence by a fair preponderance of the evidence, there can be no recovery by the plaintiff in this case."

Complaint is made of these rulings, and we think it is well grounded. Because the natural instinct of self-preservation generally prompts men to acts of care and caution when approaching or in the presence of danger, there is, in the absence of credible evidence of the actual fact in any instance, a presumption of the exercise of due care and caution. Railroad Company v. Gladmon, 15 Wall. 401, 407, 21 L. Ed. 114; Continental Improvement Co. v. Stead, 95 U. S. 161, 165, 24 L. Ed. 403; Baltimore & Ohio R. R. Co. v. Griffith, 159 U. S. 603, 610, 16 Sup. Ct. 105, 40 L. Ed. 274; Texas & Pacific Ry. Co. v. Gentry, 163 U. S. 353, 366, 16 Sup. Ct. 1104, 41 L. Ed. 186; Baltimore & Potomac R. R. Co. v. Landrigan, 191 U. S. 461, 474, 24 Sup. Ct. 137, 48 L. Ed. 262; City of Naples, 16 C. C. A. 421, 424, 69 Fed. 794; Northern Pacific Ry. Co. v. Spike, 57 C. C. A. 384, 121 Fed. 44. But it is a presumption of fact, not of law, and, like other presumptions arising from the ordinary or usual conduct of men, rather than from what is invariable or universal, it is disputable, and cannot exist where it is incompatible with the conduct of the person to whom it is sought to apply it. Fresh v. Gilson, 16 Pet. 327, 331, 10 L. Ed. 982; Insurance Co. v. Weide, 11 Wall. 438, 441, 20 L. Ed. 197; French v. Edwards, 13 Wall. 506, 514, 20 L. Ed. 702; Lincoln v. French, 105 U. S. 614, 617, 26 L. Ed. 1189; Schutz v. Jordan, 141 U. S. 213, 220, 11 Sup. Ct. 906, 35 L. Ed. 705.

Thus, in Continental Improvement Co. v. Stead, supra, it was said of persons approaching and passing over railroad crossings:

"They have, indeed, the greatest incentives to caution, for their lives are in imminent danger if collision happen; and hence it will not be presumed, without evidence, that they do not exercise proper care in a particular case. But notwithstanding the hazard, the infirmity of the human mind in ordinary men is such that they often do manifest a degree of negligence and temerity entirely inconsistent with the care and prudence which is required of them, such, namely, as an ordinarily prudent man would exercise under the circumstances. When such is the case, they cannot obtain reparation for their injuries, even though the railroad company be in fault."

And in Baltimore & Potomac R. R. Co. v. Landrigan, supra, where approval was given to an instruction to the effect that, in the absence

of evidence on the subject, there would be a presumption of the exercise of due care by one attempting to pass over a railroad crossing, but that the presumption might be rebutted by evidence of the surrounding circumstances, it was said:

"There are few presumptions, based on human feelings or experience, that have surer foundation than that expressed in the instruction objected to. But, notwithstanding the incentive to the contrary, men are sometimes inattentive, careless, or reckless of danger. These the law does not excuse nor does it distinguish between the degrees of negligence."

So, also, in the cases City of Naples and Northern Pacific Ry. Co. v. Spike, supra, it was held by this court that the presumption arising from the natural instinct of self-preservation stands in the place of positive proof "in the absence of countervailing evidence." As the presumption reflects only the ordinary or usual conduct of men, and is at utter variance with what they sometimes do, it is not entitled to probative force or weight as affirmative or positive evidence, but only to the force or effect of a rebuttable inference of fact which must necessarily yield to credible evidence of the actual occurrence. Nor is it essential that such evidence shall come from eyewitnesses to the movements of the person injured, because the presumption must equally yield to evidence which shows that the physical surroundings were such that the injury would not have occurred had he been in the exercise of reasonable care. Tomlinson v. Chicago, etc., Ry. Co., 67 C. C. A. 218, 134 Fed. 233; St. Louis & San Francisco R. R. Co. v. Chapman (C. C. A.) 140 Fed. 129; Rollins v. Railway Co. (C. C. A.) 139 Fed. 639; Northern Pacific R. R. Co. v. Freeman, 174 U. S. 379, 19 Sup. Ct. 763, 43 L. Ed. 1014. The last case was a railroad crossing case, the facts of which were these: The highway approached the crossing by a gradual decline, the length of which was 130 to 150 feet. Along the greater portion of this distance the view of an approaching train was cut off by the banks of the excavation on either side of the highway; but at a distance of about 40 feet before reaching the track the road emerged from the cut, and the view of the track for about 300 feet was unobstructed. The deceased was familiar with the crossing, and was driving a gentle team. The train which collided with his wagon was going at a speed of about 20 miles an hour. Three witnesses who at the time occupied positions ranging from 130 to 250 feet from the crossing, gave testimony tending to show that the deceased made no effort to discover whether or not a train was approaching. The court said:

"When it appears that if proper precautions were taken they could not have failed to prove effectual, the court has no right to assume, especially in face of all the oral testimony, that such precautions were taken."

And also:

"If, in this case, we were to discard the evidence of the three witnesses entirely, there would still remain the facts that the deceased approached a railway crossing well known to him; that the train was in full view; that, if he had used his senses, he could not have failed to see it; and that, notwithstanding this, the accident occurred. Judging from the common experience of men, there can be but one plausible solution of the problem how the collision occurred. He did not look, or, if he looked, he did not heed the warning, and took

the chance of crossing the track before the train could reach him. In either case he was clearly guilty of contributory negligence. * * * Upon the whole, we are of opinion that the testimony tending to show contributory negligence on the part of the deceased was so conclusive that nothing remained for the jury, and that the defendant was entitled to an instruction to return a verdict in its favor."

It is thus plainly and authoritatively settled not only that the presumption of the exercise of reasonable care is a rebuttable inference of fact, but also that it does not have any probative force or weight in a case where the surrounding circumstances are shown to have been such that, had the injured person taken reasonable precautions for his safety, the injury would not have occurred.

What is here said of this presumption is also sustained by many decisions in the state courts. Thus, in Crawford v. Chicago, etc., Ry. Co., 109 Iowa, 433, 435, 80 N. W. 519, it was said by the Supreme Court of Iowa:

"The plaintiff also contends that, as Claflin lost his life in the collision, the presumption that he exercised due care must prevail. That such a presumption is proper, and must be given weight, may be conceded, but it cannot prevail against evidence which shows that he could not have exercised due care. * * * A person possessing the ordinary powers of seeing and hearing cannot, without negligence on his part, knowingly approach a railway crossing, and fail to discover an approaching train, which he can readily see or hear a sufficient length of time to enable him, with reasonable effort, to avoid danger."

And it was said by that court in Ames v. Waterloo, etc., Co., 120 Iowa, 642, 646, 95 N. W. 161, 162:

"Had there been no evidence whatever as to the circumstances surrounding the deceased at the time his injury was received, or as to how the accident occurred, the presumption would be entertained that, prompted by the instinct of self-preservation, the deceased was taking reasonable precautions for his own safety. But several witnesses saw deceased just as he stepped forward from behind the moving wagon and was struck by the car, and the fact that there was such evidence as to what occurred prevents the presumption which would otherwise be drawn from the instinct of self-preservation from being entertained."

And again:

"It has never been held that the presumption from the instinct of self-preservation constitutes affirmative proof of any specific act, or the exercise of any specific care."

In Sullivan v. New York, etc., R. R. Co., 34 Atl. 798, it was said of this presumption by the Supreme Court of Pennsylvania:

"The plaintiff's case rested upon the bare presumption that her husband had stopped, looked, and listened before attempting to cross the tracks. His duty in this regard was fixed by an unbending rule of law. The presumption that he did it is based upon the fact that the natural instincts of men lead them to avoid injury. It prevails in the absence of direct testimony upon the subject, but it may be rebutted by the proof of facts and circumstances as well as by direct evidence. It is demonstrated by the testimony that if he obeyed the legal injunction he saw and heard the approaching train; and the only deduction possible is that he did not look and listen, or that, seeing and hearing, he went on, regardless of the danger. The case comes directly within the rule stated in Myers v. Railroad Co., 150 Pa. 386, 24 Atl. 747: 'That one who is struck by a moving train, which was plainly visible from the point he occupied when it became his duty to stop, look, and listen, must be conclusively

presumed to have disregarded that rule of law and common prudence, and to have gone negligently into an obvious danger.' "

Philadelphia, etc., R. R. Co. v. Stebbing, 62 Md. 504, 518, was an action somewhat like the present, in which the issues related to the care exercised by the defendant's enginemen and to that exercised by the plaintiff. In the course of the opinion, which was delivered by Chief Justice Alvey, a jurist of very high repute, it was observed:

"It is certainly true, the motive to self-preservation is a principle of our common nature, and it is but rational to presume, in the absence of evidence to the contrary, that parties act under its promptings in view of impending danger. But, in such cases as the present, there is a counter presumption, when the proof does not show to the contrary, and that is, that every person charged with a duty involving the safety of himself or others will perform that duty; so that in fact it is not often the case that these mere presumptions afford much assistance in arriving at correct or just conclusions. They ought not to be indulged to the exclusion of direct evidence to the contrary; and it is only where there is no reliable proof to the contrary, or there is rational doubt upon the evidence as to the acts or conduct of the parties, that such presumptions can properly be invoked. The jury ought not to be instructed in such terms as would justify them in acting upon the mere presumption of the absence of fault in either party, in disregard of the proof in the case, where there are facts and circumstances to be considered by them."

Chase v. Maine Central R. R. Co., 77 Me. 62, 66, 52 Am. Rep. 744 is also an instructive case, in which the question is discussed as follows:

"Exception is taken to the judge charging the jury to take into consideration, upon the question of the intestate's care upon the occasion of the injury, the knowledge of the jury 'of the habits of thought and mind, and the natural instincts of men,' to preserve themselves from injury. Following, as no doubt it did, an impressive argument of counsel that a man would not be so unwise as to rush into danger when it was avoidable, we are inclined to think the idea intended was presented to the jury too prominently. Such a consideration is by no means evidence; for, if it were so, a jury might accept it as conclusive evidence. It is no more than an accompaniment or an appurtenance of evidence. It may have some influence upon the interpretation of facts affirmatively presented. It pertains, as said by defendant's counsel, to those natural laws in connection with which all evidence may be weighed. It belongs to the class of slight presumptions, described by Mr. Best, which, 'taken singly, do not either constitute proof or shift the burden of proof.' 1 Best, Ev. par. 319. It may give character or force to facts already proved. But it does not of itself add or create proof. It is rather an argument or mode of reasoning upon evidence. Practically speaking, it is no more than that a person's motive may be taken into consideration in relation to any act done by such person. It would be reasonable to say that a man would be naturally stimulated to avoid rather than to rush into dangerous situations. He would be impelled by strong motives to do so. But this would apply to the engineer or fireman or brakeman on a train as well as to the traveler, although perhaps not generally in the same degree. But the weakness of the plaintiff's position lies in the fact that this motive for personal safety does not operate upon the minds of men until they can clearly see that they are endangered by their carelessness. It does not keep them from careless acts. The danger is often not seen until too late to be extricated from it. The careless act usually precedes the moment when the natural instincts of self-preservation are aroused. And a man is quite prone to take risks. And a man is careless to take a risk in crossing a railroad in advance of a coming train. We all know that he often does it."

The decision of this court in Chicago, etc., Ry. Co. v. Bryant, 13 C. C. A. 249, 256, 65 Fed. 969, although not relating to this particular

presumption, is in principle applicable to the present discussion. There the plaintiff's intestate was killed in a collision while being transported from one point to another over the defendant's road in a train, consisting of an engine and passenger coach, which was in charge of the defendant's yardmaster. When the case was first before this court it was held that, in the absence of evidence explanatory of the occurrence, the presumption was that one riding in a coach of a common carrier palpably designed for the transportation of passengers was lawfully there by the invitation or permission of the employés in charge of the vehicle, and that they had authority to bind the carrier by such invitation or permission. Bryant v. Chicago, etc., Ry. Co., 4 C. C. A. 146, 53 Fed. 997. But when the case came before the court again, it appeared, from the evidence produced at a second trial, that the yardmaster and some of his co-employés were operating the train solely for purposes of their own, without the knowledge of the defendant, and without color of authority from it, and it was then said:

"Finally, it is said that, inasmuch as the presumption that the deceased was a passenger of the company arose from the facts that the yardmaster was in possession of the train, operating it on the track of the company, and the deceased was riding therein, there was some evidence for the jury in support of the claim of the defendant in error, and the case was properly submitted to them by the court. * * * A presumption of fact, like that which the counsel for the defendant in error here invokes, is a mere inference from certain evidence, and as the evidence changes, the presumption necessarily varies. A trial court is not bound to disregard a conclusive presumption which arises from all the evidence at the close of a case because at some time in the course of a trial counter presumptions arose. Possession of real estate raises a presumption of title; but, when a legal title is proved in another, a conclusive presumption arises from all the evidence that the latter is the owner, and the court must so direct. Possession of a horse raises the presumption of ownership, but the uncontradicted evidence of competent witnesses that the horse is the property of another and that the possessor secretly took him from his owner without right raises so conclusive a presumption of ownership in the latter that the court might be bound to disregard the first presumption from possession, and the possession itself might raise a presumption of larceny."

The force and application of other presumptions are illustrated in Lisbon v. Lyman, 49 N. H. 553, 562; Agnew v. United States, 165 U. S. 36, 51, 17 Sup. Ct. 235, 41 L. Ed. 624; Dunlop v. United States, 165 U. S. 486, 502, 17 Sup. Ct. 375, 41 L. Ed. 799.

It is true that in the opinion of this court in Northern Pacific Ry. Co. v. Spike, supra, there are expressions indicating that the presumption of the exercise of due care and caution "has its application in all cases" and is entitled to weight as affirmative evidence, but as these expressions appear to have gone beyond what was necessary to a decision of that case and to ascribe to the presumption greater force and influence than in principle should be accorded to it, they cannot be permitted to control the decision of other cases. As was said by Chief Justice Marshall in Cohens v. Virginia, 6 Wheat. 264, 398, 5 L. Ed. 257:

"It is a maxim, not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit, when the very point is presented for decision. The reason of this maxim is obvious. The question actually before

the court is investigated with care, and considered in its full extent. Other principles which may serve to illustrate it are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated."

Without further reference to judicial decisions, it may be safely said: Both reason and authority enforce and sustain the conclusion that the presumption of the exercise of due care is essentially inferior in probative force and weight to credible evidence, either direct or circumstantial, explanatory·of the actual occurrence; that it arises and has application in the absence of such evidence, but not in opposition to it; and that, in those courts where it underlies the rule that the burden of proving contributory negligence rests upon the defendant, and must be maintained by a fair preponderance of the evidence, its force and influence are so largely embodied in the enforcement of that rule that it has little independent application, save as it rests upon a general, but not invariable, rule of human experience which may and should be considered in determining the credibility of evidence and the weight to be given to it when these matters are not otherwise entirely clear.

In its charge to the jury, as before shown, the court, in addition to telling them that the burden of establishing contributory negligence on the part of the deceased was on the defendant and must be maintained by a fair preponderance of the evidence, attributed to the presumption of the exercise of due care the probative force and weight of affirmative evidence, notwithstanding there was substantial evidence tending to explain the actual occurrence, and also went to the extreme of indicating that the presumption was to be regarded as if it were testimony coming from the deceased. This was error, and plainly tended to mislead the jury. Los Angeles Traction Co. v. Conneally (C. C. A.) 136 Fed. 104, 108; Thayer's Preliminary Treatise on Evidence, 337–339. There was also error in the general terms in which it was left to the jury to say whether the presumption could be overcome by evidence of the physical surroundings and other conditions at the time. That it could be so overcome was matter of law to be stated by the court, and not matter of fact to be determined by the jury.

The law requires that one about to go over so dangerous a place as a railroad crossing shall make vigilant use of his faculties of sight and hearing to discover whether or not a train is approaching, and that he shall do this at such short distance from the crossing as will be effectual for his protection. Chicago Great Western Ry. v. Smith (C. C. A.) 141 Fed. 930. It was therefore the duty of the court, when so requested, to have plainly instructed the jury that if the evidence showed that the deceased, by the exercise of reasonable care, would have seen or heard the train in time to have avoided the collision, the presumption was overcome, and the plaintiff could not recover.

While it was urged in argument that the evidence so conclusively established the defense of contributory negligence that the court should have directed the jury to return a verdict for the defendant, the present state of the record is such that that question has not been considered.

The judgment is reversed, with a direction to grant a new trial.