### BRADLEY v. MISSOURI PAC. R. CO.

(Circuit Court of Appeals, Eighth Circuit. March 28, 1923.)

No. 6076.

1. **Railroads ⊚⟶327(1)—Automobile driver and passenger, injured at street crossing, held chargeable with contributory negligence.**

Two men, who in the daytime drove in an automobile onto a railroad crossing in the town where they resided and were struck and killed by a train, *held* chargeable with contributory negligence on evidence showing that they were familiar with the crossing, that a fast train, which did not stop at the town, was a few minutes past due, that from a point 40 feet from the crossing the train could be seen when 800 feet away, and could have been heard from any near point on the street when at a greater distance, and that the car approached without stopping or slackening speed.

2. **Railroads ⊚⟶327(8), 328(2)—Traveler required to stop and to look and listen at effective point.**

It is the duty of a person approaching a railroad crossing to look at an effective point for approaching trains, and if the view is obstructed to listen, and if necessary to effective listening to stop. He cannot be excused for failure to look or listen at some effective place, and if by looking or listening he could ascertain the approach of a train, and fails to do so, and is struck at the crossing, he is chargeable with contributory negligence.

3. **Railroads ⊚⟶327(12)—Passenger in automobile, struck at crossing, chargeable with contributory negligence.**

Plaintiff's intestate, riding in an automobile with another, who was driving, when struck and killed at a railroad crossing with which he was familiar, was under the same duty as the driver to look and listen for an approaching train, and while negligence of the driver was not imputable to him, he was himself chargeable with contributory negligence, where by looking he could have seen the train in time to have prevented the accident.

4. **Negligence ⊚⟶122(5)—Presumption of care for personal safety may be rebutted by circumstances.**

There is a presumption of due care arising out of the natural instinct of self-preservation, when one is confronted with a dangerous situation; but this presumption does not constitute affirmative proof, and cannot prevail against evidence showing want of care, or against physical facts which show that care could not have been exercised.

⊚⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. Railroads ⟺346(2)—Statutory presumption of negligence does not add to weight of evidence.

A statute providing that the injury or killing of a person by a train shall be presumptive evidence of negligence of the railroad company, merely places the burden of proof on the company, and does not add to the weight of evidence of negligence introduced.

6. Negligence ⟺136(31)—Question of comparative negligence may be determined by court.

Crawford & Moses' Dig. Ark. § 8575, providing that in suits against railroads for injury or death contributory negligence shall not prevent recovery, where the negligence of the person injured or killed is of less degree than that of the railroad company, does not require the question of comparative negligence to be determined by the jury, and does not take from the court the right to decide as matter of law that the evidence does not warrant a finding that the railroad's negligence was the greater.

In Error to the District Court of the United States for the Western District of Arkansas; Frank A. Youmans, Judge.

Action at law by Mary Ann Bradley, administratrix of the estate of Frank Bradley, deceased, against the Missouri Pacific Railroad Company. Judgment for defendant, and plaintiff brings error. Affirmed.

W. V. Tompkins, D. L. McRae, and Charles. H. Tompkins, all of Prescott, Ark., for plaintiff in error.

Edgar B. Kinsworthy and Robert E. Wiley, both of Little Rock, Ark., for defendant in error.

Before SANBORN and KENYON, Circuit Judges, and SYMES, District Judge.

KENYON, Circuit Judge. A jury in the trial court returned a verdict in favor of defendant in error in an action brought by plaintiff in error to recover damages by reason of the death of one Frank Bradley, who was killed while riding in an automobile and driven by one J. U. Brown, which was struck by a passenger train of defendant in error at the Garland street crossing, in the town of Prescott, Ark. Brown likewise was killed. Plaintiff in error relies on two propositions presented by the assignments of error.

First, that the court refused to give an instruction requested by plaintiff in error, as follows:

"You are told that it is undisputed in this case that the plaintiff's intestate was killed by a running train, and this makes out a prima facie case of negligence against the defendant."

Second, that the court erred in its charge to the jury with reference to the lookout statute of the state of Arkansas and in instructing that, under the facts and circumstances of this case the lookout of the engineer alone was sufficient.

The consideration of these alleged errors is, we think, immaterial, for the reason that under the whole record in the case it is conclusively shown that both Brown and Bradley were guilty of contributory negligence in approaching the crossing, that the same was the proximate cause of their death, and that it overbalanced any negligence of the railroad company as shown by the evidence. The case, arising out of

⟺For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the death of Brown, was tried with this one. At the conclusion of the testimony the administratrix of the Brown estate entered a voluntary nonsuit. The court in his instructions stated to the jury that the undisputed facts made a case of clear negligence as to Brown, and pointed out differences in the relation of Bradley to the transaction from that of Brown.

[1] This case can properly be visualized by a rather full statement of the facts. Prescott is a town of approximately 2,900 people. Garland street, where the accident occurred, is within the corporate limits, but north of the business portion of the town. There are some industries near the crossing on the west, and on the east a bottling works, an ice plant, and a gin which was the property of Brown, and which was situated 150 feet east of the track and some distance north of Garland street. Between the main line and the first street east, at a distance of 74 feet, is located an industrial track. There is a dump of earth along the right of way on the east, beginning about 150 feet north of Garland street, and getting higher to the north. The crossing at Garland street is on a level. There is a slight curve in the track commencing about 200 feet north of the crossing and running to the south. December 3, 1920, Brown and Bradley left Brown's gin about 2 o'clock in the daytime in a Ford auto for the purpose of going to Brown's house for a rake to use in the gin. The curtains of the car were up. They proceeded south on the road parallel to the track, Bradley sitting on the rear seat and Brown operating the car; turned at Garland street; drove west to the industrial track; crossed that, and without stopping, or in any way slowing up speed, proceeded to and were struck at the crossing by the fast mail train running at a high rate of speed, and which did not stop at Prescott.

It is undisputed that from a point 40 feet east of the track on Garland street a train down to the wheels of the engine would be visible to a distance 800 feet north of the crossing. Before reaching that point on Garland street the embankment of earth along the right of way made the sight of an approaching train difficult, if not impossible. There was no smoke to obscure the view. There were no other moving trains in the vicinity to distract attention; no unusual noises from the industries; nothing to confuse or perplex. A car could have been stopped within a few feet. The eyesight and hearing of the men were unaffected. Both knew of this crossing and had passed over it for years. Bradley had worked in that immediate vicinity for 10 years. Brown had crossed at this place with his Ford car practically every day for three years in going back and forth to business. They knew it was the usual time for the fast mail to pass through Prescott. This particular day it was nearly on time—about four minutes late. None knew the crossing better than did these men. Under these circumstances the car was driven at a speed estimated at 10 miles per hour from where the road parallel to the track on the east turns into Garland street, across the industrial track, and on along the 74 feet to the main track, apparently without either Brown or Bradley looking or listening, and so far onto the track ahead of the approaching train that the car, when struck, was thrown to the west of the crossing. The only reasonable inference that can be drawn from their conduct is that

they did not look, or, if they did and saw the train, deliberately took the chance of beating it over the crossing. If the former, they were guilty of gross negligence—if the latter, gross recklessness. If parties driving automobiles persist in gambling with death at railroad crossings, their estates should not be augmented by damages if death win. Care, not chance, is the requisite at railroad crossings.

It is noteworthy in the evidence of plaintiff's witnesses that a number of them, who did not hear the bell ring or the whistle blow, heard the rumbling and noise of the train before they saw it. The witness Mrs. Moran testified that she heard the sound of the train before she saw it. She heard the train at the time the automobile was at the corner making the turn into Garland street. Witness Grayson did not hear the whistle blown nor the bell rung, but at a distance of 150 feet from the track at the Ice Cream Milling Company heard the train before he saw it and, when he saw it, it was 400 or 500 feet from the crossing. Witness Caldwell, who testified he heard no whistle, said that he heard the rumbling of the train. Witness Lumpkin who did not hear the bell or whistle, testified that he heard the train coming up the grade puffing steam. These were all witnesses for the plaintiff. Other witnesses for plaintiff heard the train whistle at the north crossing, 1,516 feet north of the Garland street crossing. A majority of the witnesses testifying on the plaintiff's side of the case as to want of signals testified to hearing the train before it reached the crossing. Why Brown and Bradley under these circumstances did not hear it, when nearly every one else in the vicinity seemed to have heard it, can only be conjectured. If they could not see the train it was their duty to listen. If he could not hear because of the noise of the automobile, it was their duty to stop. The undisputed evidence introduced on plaintiff's side of the case further shows that, from the time the automobile turned the corner on Garland street to go west until the time it was struck at the crossing, it did not slow up, but kept on at the same speed, which one witness placed at 8 or 10 miles per hour. Another witness described its speed as "pretty pert"; "about as they usually run about the street."

[2] The duty of a party approaching a railroad crossing, a known place of danger, is to look at an effective point for approaching trains. If one sees the approaching train, then, of course, there is no need for listening; but, if the view is obstructed, it is the duty to listen, and, if the noise of the automobile or conveyance is such as to prevent effective listening, then to stop and listen. A party might be excused from looking or listening at any particular point in approaching a railroad track by the intent to look or listen at a more advantageous one, but he cannot be excused from failure to look or listen at some effective place, and if by looking or listening he can ascertain the approach of a train, and fails to do so, he is guilty of contributory negligence. The necessity of stopping depends upon the question of being able to see or hear. This court in the case of Davis v. Chicago, R. I. & P. Ry. Co., 159 Fed. 10, 16, 88 C. C. A. 488, 494 (16 L. R. A. [N. S.] 424), said:

"The duty to stop is a relative one. It depends upon the situation of the particular case, the knowledge the traveler has of the situation, and the

reliance he may reasonably place under the circumstances on his opportunities for seeing and hearing without taking the last precaution of stopping. The authorities are quite in accord on the proposition that if the view is unobstructed, so that an approaching train, before it reaches the crossing, can be seen, there is no occasion for the special exercise of the sense of hearing—listening, and therefore there is no reason why he should stop for that purpose. On the other hand, if the view is obstructed, interfering with the sense of sight, then he must bring into requisition the sense of listening carefully and attentively. And if there is any noise or confusion over which he has control, such as that of the noise of the horse's feet, or the grinding sound of the wheels, or the ordinary noise of the vehicle, interfering with the acuteness of the sense of hearing, it is his duty to stop such noise or interfering obstruction and listen for the train before going upon the track."

Citing this rule with approval in the case of Chicago, M. & St. P. Ry. Co. v. Bennett, 181 Fed. 799, 104 C. C. A. 309, this court said:

"We are unwilling to depart from or relax it."

The duty of a person approaching a railroad crossing is not an open question in this jurisdiction. As said by this court in Chicago Great Western Railway Co. v. Smith, 141 Fed. 930, 931, 73 C. C. A. 164, 165:

"The law requires of one going into so dangerous a place the vigilant exercise of his faculties of sight and hearing at such short distance therefrom as will be effectual for his protection, and if this duty is neglected, and injury results, there can be no recovery, although the injury would not have occurred, but for the negligence of others." Pyle v. Clark et al., 79 Fed. 744, 25 C. C. A. 190; Davis v. Chicago, R. I. & P. Ry. Co., 159 Fed. 10, 88 C. C. A. 488, 16 L. R. A. (N. S.) 424; Chicago, M. & St. P. Ry. Co. v. Bennett, 181 Fed. 799, 104 C. C. A. 309; Chicago Great Western R. Co. v. Biwer (C. C. A.) 266 Fed. 965.

The rule is no different in other jurisdictions. Grand Trunk Ry. Co. of Canada v. Cobleigh, 78 Fed. 784, 24 C. C. A. 342; McCrory, Adm'x, etc., v. Chicago, M. & St. P. Ry. Co. (C. C.) 31 Fed. 531; Railroad Co. v. Houston, 95 U. S. 697, 24 L. Ed. 542; St. Louis, I. M. & S. Ry. Co. v. Chamberlain, 105 Ark. 180, 184, 150 S. W. 157. Clearly and indisputably Brown, the driver of the car, was guilty of negligence as a matter of law.

[3] Does the fact that Brown was driving and that it was his car so change the status of Bradley as to free him from negligence? Some of the cases rather inaccurately discuss the doctrine of imputed negligence, and confuse it with a situation where contributory negligence is a defense. We do not think the negligence of Brown here is imputable to Bradley, although they were in a way engaged in a common enterprise. Brown was not Bradley's agent. Bradley had no legal right to control his actions. The leading case in this country on this question is Little, Receiver, v. Hackett, 116 U. S. 366, 6 Sup. Ct. 391, 29 L. Ed. 652, where the court held that, if the plaintiff did not exercise control over the conduct of the driver at the time of the accident, he is not precluded from recovery by the driver's negligence, and the court so thoroughly analyzed the somewhat celebrated case of Thorogood v. Bryan, 8 C. B. 114, that the doctrine of identification there promulgated, under which a party who trusts himself to a public conveyance is held to be identified with those who have it in charge,

and their contributory negligence imputable to him, was completely exploded, and has had few followers since.

This court has had occasion in a number of cases to pass on the question of imputed negligence. In Dale v. Denver City Tramway Co., 173 Fed. 787, 97 C. C. A. 511, 19 Ann. Cas. 1223, it was held that the negligence of the chauffeur was not attributable to the deceased, who was an occupant of the automobile as a guest, and had no control over its movements. In Union Pac. Ry. Co. v. Lapsley, 51 Fed. 174, 2 C. C. A. 149, 16 L. R. A. 800, where a person who had accepted the gratuitous invitation of the owner and driver of the vehicle to ride with him was injured by the negligence of a third party, it was held that recovery could be had against the latter notwithstanding the negligence of the driver. The court said:

"With the single exception of the Supreme Court of the state of Wisconsin, which had become committed to the doctrine of Thorogood v. Bryan, prior to 1886, the state courts have uniformly held that one who, while riding in the private carriage of another at his invitation, is injured by the negligence of a third party, may recover against the latter, notwithstanding the negligence of the owner of the carriage in driving his team may have contributed to the injury, where the person injured is without fault and has no authority over the driver."

In City of Winona v. Botzet, 169 Fed. 321, 94 C. C. A. 563, 23 L. R. A. (N. S.) 204, it was held by this court that the negligence of the driver of a vehicle would not be imputed to the passenger where the relation between them does not give to the passenger any control over the driver or his movements.

While it might be suggested and urged with some plausibility that, because of the common enterprise in which they were engaged, Brown's negligence would be imputable to Bradley, we do not so hold, but place our decision squarely on the ground that, outside of any question involving the conduct of Brown, Bradley himself is conclusively shown by the record to have been guilty of contributory negligence. It may be instructive to refer to a few of the many cases involving the question of negligence on the part of a person riding in a carriage or an automobile which is driven by another. One of the leading cases is that of Davis v. Chicago, etc., Co., 159 Fed. 10, 88 C. C. A. 488, 16 L. R. A. (N. S.) 424, in which plaintiff and another party driving a horse at a crossing well known to be dangerous approached at a trot without stopping to look and listen, and were struck by a train which they did not see until the horse had stepped upon the track. It was urged that plaintiff could not be guilty of contributory negligence for the reason that the conveyance belonged to the other party and was driven by him, and the court said, 159 Fed. page 18, 88 C. C. A. 496 (16 L. R. A. [N. S.] 424):

"In the case at bar the plaintiff did not hire the conveyance and the driver to carry him to his destination; but they were traveling together in companionship in Pfeutze's vehicle on a mission of mutual interest, the plaintiff having as much right as Pfeutze to direct their course. Under the facts of this case, the relation that plaintiff sustained to his companion, Pfeutze, did not permit him to sit dumb and inert in the vehicle, taking no heed of a known danger, permitting Pfeutze to drive him into a pitfall or onto a deadly railroad track, implicitly trusting his life and limbs to the discretion of his companion,

without a word of warning or protest. It is now the better recognized rule of law that as to such a person situated as was the plaintiff, riding in a vehicle in mere companionship with his friend, engaged upon a mutual adventure, it is as much his duty as that of the driver to take observation of dangers, and to avoid them, if practicable, by suggestion and protest. In other words, he is required to exercise ordinary care to avoid injury."

. And it was held that plaintiff was guilty of contributory negligence. Judge Philips there quotes with approval the language of the Supreme Court of New York in Brickell v. N. Y. C. & H. R. Co., 120 N. Y. 290–294, 24 N. E. 449, 450 (17 St. Rep. 648), as follows:

"It is no less the duty of the passenger, where he has the opportunity to do so, than of the driver, to learn of danger and avoid it if practicable."

In Erie R. Co. v. Hurlburt, 221 Fed. 907, 137 C. C. A. 477, the plaintiff was riding with her husband approaching a railroad crossing. It was insisted that the negligence of her husband, the driver, would not be imputed to her. The court says:

"If both of them were engaged in looking and listening for a train, as they evidently were, then the negligence of each, while so engaged, must be regarded as the negligence of both of them."

And it held that plaintiff was chargeable with her own negligence on the occasion in question. She testified as to looking and listening, and the court held that, notwithstanding the plaintiff testified that she looked and listened and did not hear the train, it was in such contravention of the physical facts and so improbable that it did not afford a scintilla of evidence upon which to go to the jury.

In Hall v. West Jersey & S. R. Co., 244 Fed. 104, 156 C. C. A. 532, plaintiff and six others taking a pleasure ride in an automobile were struck by a train at a crossing. The plaintiff was on the front seat, but was not driving. Plaintiff knew the crossing, and was in position where she could observe and warn the driver of danger. Had they looked, they must have seen the train. The court says, under these circumstances, there was no disputable issue, and that plaintiff was guilty of contributory negligence.

In Fluckey et al. v. Southern Ry. Co., 242 Fed. 468, 470, 155 C. C. A. 244, the facts are quite similar to those in this case. At a point 40 feet from the crossing the driver could see 120 feet along the track upon which a car was approaching. It was there held that it was the duty of the driver to look as soon as he could see, and also to have his machine "under such control that, if necessary, he could stop before getting into the danger zone. In this respect the case is to be distinguished from that of one driving horses, where to undertake to stop so near the rail may involve danger." As Mrs. Fluckey in this case testified that she assumed the duty of looking out for danger, and was undertaking to give any warning that might be necessary, no question was involved of imputing to her the negligence of the driver, but she was held guilty of negligence.

In Rebillard v. Minneapolis, St. P. & S. S. M. Ry. Co., 216 Fed. 503, 506, 133 C. C. A. 9, 12 (L. R. A. 1915B, 953), this court, in speaking of the rule that the contributory negligence of the driver of a public conveyance would not be imputed to a passenger, and the holding

of this court extending that rule to the person accepting a gratuitous invitation of the owner of the vehicle by riding with him, says:

"But an examination of the many cases on that question shows that the writers of the opinions are careful to except a passenger or guest who with knowledge of the danger remains in such dangerous position."

And it was held that the plaintiff, riding in a motor car on a dark night, without lights, over roads which neither the driver of the car nor any of the persons in the car were familiar with, and with full knowledge of that fact, remained in the car, was as guilty of negligence as the driver himself.

In Gersman v. Atchison, T. & S. F. Ry. Co. (Mo. Sup.) 229 S. W. 167, a party was riding with another for a common purpose, with equal opportunity to see and ability to appreciate the danger, but made no effort to avoid it. He was held under the facts of that case to be equally as negligent as the driver.

In Hoyle v. Northern Pac. Ry. Co., 105 Wash. 652, 178 Pac. 810, intestate, seated with his employer, who was driving a motor truck over a crossing, was killed by a train. The negligence of the driver was not imputed to decedent, but the court held that the facts established negligence on the part of plaintiff to such a degree as would have warranted the trial court in taking the case from the jury. The court said:

"Riding beside the driver, on the side from which the train was approaching, the slightest degree of care for his own safety would have caused him to look for the regular train then due, which always passed that crossing at a high rate of speed,"

which is singularly in point here.

In Beemer v. Chicago, R. I. & P. Ry. Co., 181 Iowa, 642, 162 N. W. 43, the husband was driving the car. The wife was seated on the front seat with the same knowledge of the approach to the crossing and the danger as he had. It was held that she was as much under the duty of lookout and discovery of danger as was her husband. Held guilty of contributory negligence.

In Morris v. Chicago, B. & Q. R. Co. et al., 101 Neb. 479, 163 N. W. 799, it was held that one riding in an automobile driven by another, remaining in it with knowledge that it was approaching a dangerous railroad crossing without taking any precautions by way of warning the driver, or otherwise, was guilty of contributory negligence and could not recover. See, also, Hajsek v. C., B. & Q. R. Co., 5 Neb. (Unof.) 67, 97 N. W. 327; Willfong v. Railway Co., 116 Iowa, 548, 90 N. W. 358.

In Johnson v. Delano, 100 Neb. 192, 158 N. W. 1034, the case arose over the killing of two parties at a railroad crossing by a railroad train. Discussing the question as to who drove the team the court says that is immaterial; that, "if either party had looked and listened, and had given the natural warning, the accident would have been avoided." Decedent was held guilty of contributory negligence as a matter of law.

In Cotton v. Willmar & S. F. Ry. Co., 99 Minn. 366, 109 N. W. 835, 8 L. R. A. (N. S.) 643, 116 Am. St. Rep. 422, 9 Ann. Cas. 935, the

court discusses and groups the various doctrines as to negligence in the driving of vehicles, and the doctrine of imputed negligence, and holds that a person employing a livery team with a driver does not create the relation of master and servant; that they are not engaged in a common employment or a joint enterprise, and while the negligence of the driver is not imputable to the passenger, he is not excused for his own personal negligence.

In Bush v. Union Pac. R. Co., 62 Kan. 709, 64 Pac. 624, plaintiff was invited to accompany a gentleman on a drive. She had no control over the vehicle. She knew of the crossing. She did not look or listen within fifty feet of the same. The court says:

"Her opportunity and ability to see and appreciate the danger were equal to his. She was in no way relying upon him."

Held, she was guilty of contributory negligence as a matter of law.

In Wosika v. St. Paul City Ry. Co., 80 Minn. 364, 83 N. W. 386, it was held that one who is riding on a rear seat of a vehicle, having no direct control over the horses, but a joint contributor to the hire of the team, is guilty of contributory negligence if he does not look for approaching cars upon a street railway track.

In Cunningham v. City of Thief River Falls et al., 84 Minn. 21, 86 N. W. 763, it was held that, where a number of parties were riding in a rig, plaintiff was not engaged in a joint enterprise with the driver of the vehicle in which he was riding, and the negligence of the driver was not imputable to her. The court distinguishes, however, as to contributory negligence and says that a failure on their part to exercise reasonable and ordinary care to avoid the injury would constitute negligence which would prevent a recovery; that:

"If they were cognizant of the danger resulting in their injury, and failed to call the driver's attention to it, but permitted him to drive recklessly into it without protest on their part, no recovery could be had."

In Sadler v. Northern Pac. Ry. Co. et al., 118 Wash. 121, 203 Pac. 10, it was held that, while the negligence of a driver of an automobile would not be imputed to a guest, the duty was upon the guest to use reasonable precautions for his own safety, and the court says that as the decedent did not warn the driver where he could have seen 1,000 feet along the track from a distance of seventy feet therefrom, his contributory negligence was conclusively established as a matter of law.

In Dean v. Pennsylvania R. Co., 129 Pa. 514, 18 Atl. 718, 6 L. R. A. 143, 15 Am. St. Rep. 733, the facts were that plaintiff knew the locality of the crossing and that a train was due. He sat with his back to the driver, who drove onto the crossing at a fast trot. He did not look or listen or warn the driver. He was being carried without compensation, merely as an act of kindness, and the court said the negligence of the driver could not be imputed to him, but that he was guilty of contributory negligence.

In Mittelsdorfer v. West Jersey & S. R. Co., 77 N. J. Law, 698, 73 Atl. 538, it was said by the court that the fact that plaintiff was a guest did not relieve her from exercising ordinary care; the question of her negligence, however, was held to be for the jury.

In Farley et al. v. Wilmington & N. Electric Ry. Co., 3 Pennewill,

581, 52 Atl. 543, discussing the question of implied negligence and the various doctrines relating thereto, the court says:

"Even in such case, however, the passenger is bound to exercise due care and caution as well as the driver. It is no less the duty of the passenger, where he has the opportunity to do so, than of the driver, to learn of danger, and to avoid it if practicable.'"

In Brommer v. Pennsylvania R. Co.-Pennsylvania R. Co. v. Henderson, 179 Fed. 577, 103 C. C. A. 135, 29 L. R. A. (N. S.) 924, the question was as to contributory negligence of the person riding in an automobile driven by another. The owner of the automobile had invited a number of parties including the plaintiff, to ride with him. And the court held that Henderson, the party sitting at the side of the driver was equally culpable with him; that he knew they were approaching a railroad crossing and knew the view was shut off, and on page 582 of 179 Fed., on page 140 of 103 C. C. A. (29 L. R. A. [N. S.] 924), the court says:

"Under the circumstances he was called on to act, or, if he chose to keep silence and join in chancing the crossing, the law will not hold him faultless of his share of bringing about the accident. The power, speed, and control of automobiles are new factors in the crossing of railroads. They tempt a reckless driver to make flying crossings. On the other hand, they afford elements of safety and convenience to a careful one. The law contributes to the rational enjoyment of the automobile, to the safety of its occupants, and to the welfare of the railroad traveling public, when, in these early cases, it holds the automobile drivers rigidly to the rule laid down in the Maidment Case that: 'The duty of an automobile driver approaching tracks where there is restricted vision to stop, look, and listen, and to do so at a time and place where stopping and where looking and where listening will be effective, is a positive duty.'"

These cases are sufficient authority for the common sense doctrine that parties cannot sit quietly in an automobile when the driver thereof is taking them into a place of danger, well known by them to be such, and fail to warn him or to protest, and be in the exercise of such care as the law demands.

[4] Plaintiff in error insists that the presumption of due care as to Bradley saves the situation from contributory negligence as a matter of law. There is a presumption of due care arising out of the natural instinct of self-preservation where one is confronted with a dangerous situation. Railroad Co. v. Gladmon, 15 Wall. 401, 407, 21 L. Ed. 114; Baltimore & Ohio R. R. Co. v. Griffith, 159 U. S. 603, 16 Sup. Ct. 105, 40 L. Ed. 274; Baltimore & Potomac R. R. Co. v. Landrigan, 191 U. S. 461, 24 Sup. Ct. 137, 48 L. Ed. 262; Wabash R. Co. v. De Tar, 141 Fed. 932, 73 C. C. A. 166, 4 L. R. A. (N. S.) 352. This presumption does not constitute affirmative proof, and it cannot prevail against evidence showing the want of care, or against physical facts which show that care could not have been exercised. This court in Northern Pac. Ry. Co. v. Spike, 121 Fed. 44, 57 C. C. A. 384, said:

"Presumption arising from this natural instinct of self-preservation stands in the place of positive evidence, and is sufficient to warrant a recovery, in the absence of countervailing testimony."

Further:

"Nor is this presumption applied only when no one witnesses the accident. It has its application in all cases, and may be strong enough to overcome the testimony of an eyewitness."

Later this court in Wabash R. Co. v. De Tar, 141 Fed. 932, 938, 73 C. C. A. 166, 172, 4 L. R. A. (N. S.) 352 (opinion by Justice Van Devanter), questions the doctrine of Northern Pac. Ry. Co. v. Spike, and referring to the expression there with reference to the presumption having "its application in all cases," says:

"But as these expressions appear to have gone beyond what was necessary to a decision of that case and to ascribe to the presumption greater force and influence than in principle should be accorded to it, they cannot be permitted to control the decision of other cases."

The court also said (141 Fed. 939, 73 C. C. A. 173, 4 L. R. A. [N. S.] 352): ··

"In its charge to the jury, as before shown, the court, in addition to telling them that the burden of establishing contributory negligence on the part of the deceased was on the defendant and must be maintained by a fair preponderance of the evidence, attributed to the presumption of the exercise of due care the probative force and weight of affirmative evidence, notwithstanding there was substantial evidence tending to explain the actual occurrence, and also went to the extreme of indicating that the presumption was to be regarded as if it were testimony coming from the deceased. This was error, and plainly tended to mislead the jury. Los Angeles Traction Co. v. Cônneally (C. C. A.) 136 Fed. 104, 108; Thayer's Preliminary Treatise on Evidence, 337–339. There was also error in the general terms in which it was left to the jury to say whether the presumption could be overcome by evidence of the physical surroundings and other conditions at the time. That it could be so overcome was matter of law to be stated by the court, and not matter of fact to be determined by the jury."

In the same case the court said (141 Fed. 934, 73 C. C. A. 168, 4 L. R. A. [N. S.] 352):

"But it is a presumption of fact, not of law, and, like other presumptions arising from the ordinary or usual conduct of men, rather than from what is invariable or universal, it is disputable, and cannot exist where it is incompatible with the conduct of the person to whom it is sought to apply it."

In United States v. Homestake Min. Co., 117 Fed. 481, 486, 54 C. C. A. 303, 308, speaking of a presumption of fact, that the taking of timber from land of the United States was willfully and intentionally done, this court said:  ○

"But this is only a disputable presumption of fact, which the evidence may so completely overcome that it becomes the duty of the court to instruct the jury that it cannot prevail."

See also Chicago & N. W. Ry. Co. v. Andrews, 130 Fed. 65, 64 C. C. A. 399; Rich v. Chicago, M. & St. P. Ry. Co., 149 Fed. 79, 78 C. C. A. 663; St. Louis & S. F. R. Co. v. Cundieff, 171 Fed. 319, 96 C. C. A. 211; Erie R. Co. v. Hurlburt, 221 Fed. 907, 137 C. C. A. 477; Northern Pacific R. R. Co. v. Freeman, 174 U. S. 379, 19 Sup. Ct. 763, 43 L. Ed. 1014; St. Louis & S. F. R. Co. v. Chapman, 140 Fed. 129, 71 C. C. A. 523.

The presumption of due care applied here, in order to avert the conclusion that Bradley was guilty of contributory negligence as a matter

of law, must assume that he saw the train, that he then warned Brown, that Brown refused to stop, and that Bradley then tried to get out of the car. If the presumption could be carried thus far, it would conflict with another equally strong presumption, viz. that when Brown was warned of the near approach of the train he would exercise the instinct of self-preservation likewise and not drive immediately in front of a fast approaching instrument of death. Further, the witness Mrs. R. C. Calhoun, who saw the accident, testified as follows:

"I saw the auto come up on the industry track, and saw it from then until it was struck. It did not stop or slow down until it was struck. Neither did it have the curtains up. I did not see any one try to get out of the car. I could not distinguish any person in the car."

In the face of all the physical surroundings and the ever-present facts that, had Bradley looked at about 40 feet from the track, or nearer, he must have seen the approaching train and could have warned Brown, that he knew the crossing, and everything about it, as well as did Brown, and knew that the train went through at that particular time of day at a high rate of speed without stopping the presumption of due care on his part is unavailing. It cannot offset such positive evidence of negligence as the physical surroundings present. The duty was upon him in approaching this crossing to ascertain the approach of a train by exercising his faculties of sight and hearing at such a place and within such distance from the crossing as would be effective. He could not rely on Brown to protect him. The duty to look was as much upon him as upon Brown. There is no partition in the usual Ford car separating the front and rear seats; no reason why he could not have warned Brown in time to stop. If he failed to look where he could effectively see he was guilty of negligence. If, seeing, he failed to warn Brown, he was equally guilty of negligence, and the negligence of the railroad company would not excuse him. While the railroad company is under legal obligation to give warnings at crossings, parties cannot rely thereon and fail to exercise their own faculties for protection. It has been said by some court that the last clear chance to prevent an accident at a railroad crossing is nearly always with the driver of the automobile.

This is not a situation of where a party is thrown into a sudden hazard by the negligence of another as in Warth v. Jackson County Court, 71 W. Va. 184, 76 S. E. 420. Under such circumstances the doctrine of sitting tight and keeping still might be applicable, as suggestion to the driver at that time might make the hazard even greater. Here the hazard was brought about as much by Bradley's negligence as by Brown's. We think the question of contributory negligence here was one of law for the court, as the evidence relating thereto was undisputed, and but one conclusion can be drawn therefrom by reasonable minds, and that is that Bradley was guilty of contributory negligence, and the court would have been justified in so holding as a matter of law. Grand Trunk Ry. Co. v. Ives, 144 U. S. 408, 417, 12 Sup. Ct. 679, 36 L. Ed. 485; Union Pac. Ry. Co. v. McDonald, 152 U. S. 262, 283, 14 Sup. Ct. 619, 38 L. Ed. 434; Railroad Co. v. Houston, 95 U. S. 697, 24 L. Ed. 542; Baltimore & Ohio R. R. Co. v. Griffith,

159 U. S. 603, 16 Sup. Ct. 105, 40 L. Ed. 274; Dernberger v. Baltimore & O. R. Co., 243 Fed. 21, 155 C. C. A. 551; Neininger v. Cowan et al., 101 Fed. 787, 42 C. C. A. 20; Craig v. Chicago, St. P., M. & O. R. Co., 97 Neb. 426, 150 N. W. 374.

[5] Section 8575, c. 149, Crawford & Moses' Digest of the Stats. of Ark., provides as follows:

"*Personal Injury or Death—Contributory Negligence.* In all suits against railroads, for personal injury or death, caused by the running of trains in this state, contributory negligence shall not prevent a recovery where the negligence of the person so injured or killed is of less degree than the negligence of the officers, agents or employees of the railroad causing the damage complained of: Provided, that where such contributory negligence is shown on the part of the person injured or killed, the amount of recovery shall be diminished in proportion to such contributory negligence."

Under this section contributory negligence does not prevent recovery in Arkansas, where it is of less degree than the negligence of the railroad. The trial court submitted the feat of balancing negligence to the jury, and they evidently concluded that the negligence of decedent was equal to or greater than that of the railroad. It is undoubtedly plaintiff in error's theory that, had the court stated to the jury that there was a presumption of negligence, under the Arkansas statute, against the railroad, where a person was killed by a running train, it would have assisted in overbalancing the contributory negligence of Bradley. The presumption of negligence under the Arkansas statute does not, we think, add to the weight of evidence introduced of negligence, but creates merely a presumption of negligence, which operates to place the burden of proof upon the railroad company. Such presumption, however, ceased to have effect where there is substantial evidence to the contrary. Evidence was introduced as to the negligence of the railroad company in failing to whistle or ring bells and in running the train at a high rate of speed approaching this crossing.

[6] Could the presumption of negligence contended for by plaintiff in error by virtue of the Arkansas statute be considered as additional to this evidence, even then there could be no question, it seems to us in the minds of reasonable men, that the negligence of the deceased exceeded the negligence of the railroad company. The statute does not provide that this question of comparative negligence must be determined by a jury, and does not attempt to take from the court the right, where no other inference can be drawn from the evidence by reasonable men, to decide as a question of law that the evidence of negligence on the part of decedent equaled or exceeded that of the railroad company.

Reaching the conclusion we do, it is unnecessary to pass on the alleged errors of the court. They are immaterial, because, under the law and the facts, defendant was entitled to a verdict upon the whole case, and this makes applicable section 269, chapter 48, page 1181, 40 Statutes at Large (Comp. St. Ann. Supp. 1919, § 1246), as follows:

"All of the said courts shall have power to grant new trials, in cases where there has been a trial by jury, for reasons for which new trials have usually been granted in the courts of law. On the hearing of any appeal, certiorari, writ of error, or motion for a new trial, in any case, civil or criminal, the

court shall give judgment after an examination of the entire record before the court, without regard to technical errors, defects, or exceptions which do not affect the substantial rights of the parties."

The judgment is affirmed.